# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **JULIE CHRISLEY, individually and** | : | |
| **as majority owner of CHRISLEY** | : | |
| **ASSET MANAGEMENT, LLC,** | : | |
| **and PACIFIC DEVELOPMENT** | : | **CIVIL ACTION** |
| **PARTNERS, LLC,** | : | **FILE NO.** |
| | : | |
| **Plaintiffs,** | : | _____ |
| | : | |
| | : | **JURY TRIAL** |
| **v.** | : | **DEMANDED** |
| | : | |
| **MARK BRADDOCK, LESLIE** | : | |
| **(HERSHBERGER) BRADDOCK,** | : | |
| **ALINA CLERIE, GRACE REALTY** | : | |
| **GROUP, LLC, KEY ASSET** | : | |
| **SOLUTIONS, LLC, PRIVATE** | : | |
| **PEERING POINT, LLC,** | : | |
| **WATERCOLOR RETREAT, LLC,** | : | : |
| **KIMBERLY A. CHILDS,** | : | |
| **JAMES "STAGG" SHELTON,** | : | |
| **ARC AUTO BROKERS, LLC,** | : | |
| **VALENCIA WALKER, and** | : | |
| **STEVEN LINDSEY,** | : | |
| | : | |
| **Defendants.** | : | |

## COMPLAINT FOR GEORGIA RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (O.C.G.A. § 16-14-1, *et seq*.), FRAUD, FORGERY, INVASION OF PRIVACY, VIOLATION OF THE GEORGIA COMPUTER SYSTEMS PROTECTION ACT, BREACH OF FIDUCIARY DUTY, FEDERAL COMPUTER FRAUD AND ABUSE ACT, ACCOUNTING, THEFT, TORTIOUS INTERFERENCE WITH CONTRACT AND BUSINESS RELATIONSHIPS, UNJUST ENRICHMENT, TEMPORARY AND PERMANENT INJUNCTIVE RELIEF, ATTORNEYS' FEES AND COMPENSATORY, TREBLE AND PUNITIVE DAMAGES

1

COME NOW Plaintiffs Julie Chrisley, in her individual capacity as well as in her capacity as majority owner of Chrisley Asset Management, LLC, and Pacific Development Partners, LLC (collectively, "Plaintiffs"), who allege as follows, which allegations are supported and substantiated by sworn affidavits attached to this Complaint:

## INTRODUCTION AND NATURE OF THE DISPUTE

### 1.

Plaintiffs bring this case to redress an ongoing racketeering enterprise involving some or all Defendants predicated upon corporate espionage, breach of fiduciary duty, theft of substantial sums of company monies to establish a competing business and other purposes, embezzlement, breach of an operating agreement, forgery and alteration of an operating agreement, forgery and theft of personal funds and other assets, violations of state and federal wiretap statutes, theft of trade secrets and confidential information, interference with and theft of electronic communications of corporate and personal computer records and email accounts, material misrepresentation of ownership and position in the company for personal gain and to steal company clients and business, conspiracy, willfully withholding electronic and physical property of the company including computer pass codes and access to accounts, material assets of the company, denial of access to proprietary information, theft by conversion, threats of bodily harm,

stalking company employees, intimidating company employees to coerce them lie to members and managers of Chrisley Asset Management, LLC and to government authorities.

2.

The Defendants have committed some or all of the above acts against Plaintiffs as alleged herein, and this Honorable Court is asked to enjoin Defendants' illegal activities, prohibit the Defendants from interfering with the business of the Plaintiffs, order a full accounting and disgorgement of the stolen and misappropriated monies and other assets belonging to Plaintiffs, and award appropriate compensatory, punitive and treble damages pursuant to the Georgia Racketeer Influenced and Corrupt Organizations Acts, O.C.G.A. § 16-14-1, *et seq*. ("RICO") and other applicable state and federal law, as set forth below.

**JURISDICTION AND VENUE**

3.

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 (federal question). This court has supplemental jurisdiction over the state law claims set forth in this complaint pursuant to 28 U.S.C. § 1367 in that (a) this court has original jurisdiction over the federal claims, and (b) the state law claims are so related to claims within the Court's original jurisdiction that they

form part of the same case or controversy under Article III of the United States Constitution.

4.

Venue is proper in the Northern District of Georgia pursuant to 28 U.S.C. § 1391(b), (c) and (d) in that the events giving rise to Plaintiffs' claims occurred in this district, Defendants reside in and were subject to the personal jurisdiction of this Court at the time the action was commenced.  Further, jurisdiction and venue are proper pursuant to Georgia's long-arm statute, O.C.G.A. § 9-10-91.

**PARTIES**

5.

Plaintiff Julie Chrisley is a resident of Walton County, Florida with a home in Fulton County, Georgia and submits to the venue and jurisdiction of this Court.

6.

Plaintiff Pacific Development Partners, LLC ("PDP") is a limited liability company organized under the laws of and resident of the State of Georgia with its headquarters in Fulton County, Georgia and submits to the jurisdiction and venue of this Court.  The Members of PDP are: E Z Title Loans, LLC (80%) and Defendant Braddock (20%).

7.

Plaintiff Chrisley Asset Management, LLC ("CAM") is a limited liability company organized under the laws of and resident of the State of Georgia with its headquarters in Fulton County, Georgia and submits to the jurisdiction and venue of this Court.  Plaintiff Julie Chrisley owns a controlling and majority interest in CAM.

8.

Julie Chrisley, PDP and CAM are sometimes collectively referred to as "Plaintiffs" throughout this Complaint.

9.

Defendant Mark Braddock ("Mark Braddock") is a resident of Fulton County, Georgia, and at all times relevant to this Complaint was an officer of Plaintiff CAM and held the title of Vice President, and in that capacity breached his fiduciary duty to CAM.  Braddock either committed or acted in concert with others in committing the acts and omissions alleged in this Complaint within this district or directed at and harming persons within this district, and is therefore subject to the jurisdiction and venue of this Court.

10.

Defendant Alina Clerie ("Clerie") is a resident of Gwinnett County, Georgia, was employed in Fulton County Georgia, and at all times relevant to this

Complaint was an officer of Plaintiff CAM and held the title of Vice President of Finance.  Clerie either committed or acted in concert with others in committing the acts and omissions alleged in this Complaint within this district or directed at and harming persons within this district, and is therefore subject to the jurisdiction and venue of this Court.

11.

Defendant Grace Realty Group, LLC ("Grace") is a Georgia limited liability corporation with its principal place of business located at 970 Peachtree Industrial Blvd., Ste. 100, Suwanee Georgia 30024 and having as its registered agent The Gibson Law Firm, LLC, 1979 Lakeside Pkwy, Suite 180, Tucker, Georgia 30084. Defendant Valencia Walker owned Grace, which was started and financed on a continuing basis with money provided by Defendant Mark Braddock, who was repaid via referral fees from Grace, and Defendants Leslie Braddock and Clerie worked as agents for Grace.  Grace either committed or acted in concert with others in committing the acts and omissions alleged in this Complaint within this district or directed at and harming persons within this district, and is therefore subject to the jurisdiction and venue of this Court.

12.

Defendant Key Asset Solutions, LLC ("Key") is a Georgia limited liability company with its principal address at P.O. Box 19033, Atlanta, Georgia 31126 and

having as its registered agent Michael E. Jacobs, 11680 Great Oaks Way, Suite 100, Alpharetta, Georgia 30022.  Key, which is wholly-owned by Defendant Mark Braddock, holds a 30% ownership interest in CAM.  Key either committed or acted in concert with others in committing the acts and omissions alleged in this Complaint within this district or directed at and harming persons within this district, and is therefore subject to the jurisdiction and venue of this Court.

13.

Defendant Watercolor Retreat, LLC ("Watercolor") is a Florida limited liability company with its principal address at 11680 Great Oaks Way, Suite 100, Alpharetta, Georgia 30022 and having as its registered agent Michael E. Jacobs, 11680 Great Oaks Way, Suite 100, Alpharetta, Georgia 30022.  Watercolor either committed or acted in concert with others in committing the acts and omissions alleged in this Complaint within this district or directed at and harming persons within this district, and is therefore subject to the jurisdiction and venue of this Court.

14.

Defendant Private Peering Point, LLC ("PPP") is a Georgia limited liability company with its principal address 3715 Northside Parkway, NW, Atlanta, Georgia 30327, d/b/a "VocalCloud" (an unincorporated business entity) with its principal address at P.O. Box 70245 Marietta, Georgia 30007.  For purposes of this

Complaint, "PPP" and "VocalCloud" are used interchangeably and in fact are alter egos of each other. PPP builds and maintains voice over Internet Protocol ("VoIP") systems and performs other computer operating, networking and servicing functions. PPP either committed or acted in concert with others in committing the acts and omissions alleged in this Complaint within this district or directed at and harming persons within this district, and is therefore subject to the jurisdiction and venue of this Court.

15.

Defendant Steven Lindsey ("Lindsey") is an Associate Engineer at Defendant PPP/VocalCloud. Lindsey either committed or acted in concert with others in committing the acts and omissions alleged in this Complaint within this district or directed at and harming persons within this district, and is therefore subject to the jurisdiction and venue of this Court.

16.

Defendant James "Stagg" Shelton ("Stagg") is a resident of Cobb County and is a co-founder and principal of Defendant PPP whose principal business operations are conducted in Fulton County Georgia. Shelton has as his principal address 4466 Mountain Creek Drive, NE, Roswell, Georgia 30075. Stagg either committed or acted in concert with others in committing the acts and omissions alleged in this Complaint within this district or directed at and harming persons

within this district, and is therefore subject to the jurisdiction and venue of this Court.

17.

Defendant Kimberly A. Childs ("Childs") is a resident of Fulton County and has as her address 2727 Paces Ferry Road, Suite 1-225, Atlanta, Georgia 30339. Childs is and was at all relevant times legal counsel for Defendant Braddock and either committed or acted in concert with others in committing the acts and omissions alleged in this Complaint within this district or directed at and harming persons within this district, and is therefore subject to the jurisdiction and venue of this Court.

18.

Defendant Valencia Walker ("Walker") is a resident of Fulton County and is an agent and principal for Defendant Grace.  Walker has as her address 87 Mountain Pass Trail, SW, Lilburn GA 30047.  Walker either committed or acted in concert with others in committing the acts and omissions alleged in this Complaint within this district or directed at and harming persons within this district, and is therefore subject to the jurisdiction and venue of this Court.

19.

Defendant Leslie (Hershberger) Braddock ("Leslie Braddock") is a resident of Fulton County and is or was married to Defendant Mark Braddock.  Leslie

Braddock either committed or acted in concert with others in committing the acts and omissions alleged in this Complaint within this district or directed at and harming persons within this district, and is therefore subject to the jurisdiction and venue of this Court.

20.

Defendant Arc Auto Brokers, LLC ("Arc Auto") is a Georgia limited liability corporation co-owned by Defendant Clerie and her husband Roland Clerie with its principal place of business at 4162 Azalea Crest Walk Suwanee, Georgia 30024 and having as its registered agent Defendant Clerie.

## BACKGROUND AND ALLEGATIONS
## RELATING TO ALL COUNTS

21.

CAM was established by Todd and Julie Chrisley in 2005 to manage real estate assets owned by the Federal National Mortgage Association ("Fannie Mae") and others following foreclosures in order to maintain such properties, upgrade and repair the properties and sell them, whereupon CAM would be paid a commission.

22.

In or about, 2005 Todd Chrisley, his wife Julie Chrisley, and Defendant Mark Braddock all became Members and Managers of CAM. Prior to that time,

Todd Chrisley was the sole owner.   The percentage of ownership of CAM was established as follows: Julie Christie, 60%, Todd Chrisley, 10%, and Mark Braddock (through Key), 30%, who at all times relevant to this Complaint was an officer of CAM holding the title of Vice President.

23.

CAM performed well financially, and the business expanded into performing real estate asset management for its customers and clients.

**Allegations Regarding Defendants'**

**Ongoing Pattern of Criminal Activity**

24.

Approximately two years ago, Todd Chrisley began receiving unsettling information about his partner, Mark Braddock, from several employees and others.   Todd Chrisley was not present for most of the day-to-day operations of the business, and allowed Mark Braddock as part-owner and manager to operate in an independent and largely unsupervised capacity.

25.

Based upon information from employees, Todd Chrisley began investigating Mark Braddock's alleged impropriety with respect to CAM's business affairs.   As a result of his investigation, Todd Chrisley discovered that

Mark Braddock was engaged in ongoing illegal and unethical conduct which was severely damaging to the Chrisleys personally and CAM professionally.

26.

On or about July 11, 2012, Mark Braddock formed a new company, US Asset Management Partners, LLC ("US Asset"), which Mark Braddock has represented would acquire portfolios of properties from investors, provide R.E.O. management services with respect to those properties, and close the sale of those properties.  As represented by Mark Braddock, US Asset is intended to and would in fact directly compete with CAM.  Mark Braddock stated to employees that his reason for diverting this potential business away from CAM was to avoid sharing profit with the Chrisleys.  (*See* Affidavit of Leland Nicholson filed on August 14, 2012 in *Julie Chrisley and Chrisley Asset Management, LLC v. Mark Mark Braddock and Alina Clerie*, Superior Court of Fulton County, Georgia, Civil Action No. 2012-cv-219963 (the "Superior Court Action"), attached to this Complaint as Exhibit "A" ("Nicholson Aff."), at ¶ 3).  On information and belief, Mark Braddock has diverted CAM funds, employees, vendors, and other tangible and intangible assets of CAM to his company.

27.

Plaintiffs as a result of their investigation also a found false and fraudulent "Operating Agreements" for CAM and another company which Todd Chrisley formerly owned but which had been dissolved.  On information and belief, these fraudulent "Operating Agreements" were prepared by Defendants Mark Braddock and Clerie.  One of the fraudulent "Operating Agreements", which contains fraudulent signatures, lists Defendant Mark Braddock as a "Manager" of the defunct company and which purports to transfer a substantial portion of the stock of the company to Key, which is wholly-owned by Mark Braddock.  (See Affidavit of Todd Chrisley ("Chrisley Aff.") filed in the Superior Court Action, attached hereto as Exhibit "D", at ¶¶ 4-9).  All of these documents are fictitious and fraudulent, contain forged signatures, and are designed to unlawfully transfer ownership interests and authority to Mark Braddock without the knowledge or consent of the true owners.  (Id.).

28.

Defendant Mark Braddock has made repeated false and fraudulent statements to numerous third parties that he is the majority owner of CAM and that he has authority which he does not lawfully have.  Defendant Mark Braddock repeatedly represented to clients and employees of CAM that he was a majority

owner of CAM and would soon finalize a plan to become the sole owner. (Chrisley Aff., ¶¶ 9-11; Cash Aff., ¶ 8).

29.

Defendant Mark Braddock also routinely asked CAM employees to withhold pertinent and time-sensitive business and financial information from Todd Chrisley, and to alter financial performance data to reflect lower performance and to reflect that CAM was performing on the lowest "tier" of Fannie Mae's metrics. This misinformation resulted in representations to the Chrisleys that the company's revenue was 40% below the actual revenue, giving Defendant Mark Braddock a substantial margin devoid from scrutiny of the majority owners of CAM with which he and the bookkeeper,  Defendant Clerie, could establish a slush fund to finance their illegal activities.   (Nicholson Aff., ¶ 6; Cash Aff., ¶ 11).

30.

Defendants Mark Braddock and Clerie conspired to divert, steal, and embezzle money from Plaintiff CAM.  Mr. Nicholson, a CAM officer and Porfolio Manager, testified under oath in the Superior Court Action that Mark Braddock and Clerie informed him that Embassy Bank had unilaterally seized CAM's receivables due to default on a personal debt of the Chrisleys, which was untrue. (Nicholson Aff., ¶ 7).  Mark Braddock and Clerie also conspired together to hide money from Todd Chrisley, including opening a separate, fraudulent bank account,

and preventing Plaintiffs from finding out how much money the company had earned by falsifying and misrepresenting financial records.  (Nicholson Aff., ¶ 7).

31.

Defendant Mark Braddock also has admitted to unlawfully stealing substantial tangible assets from Plaintiffs.  Mark Braddock admitted to the CAM Portfolio Manager and Vice President of Operations Leland Nicholson that Mark Braddock intended to steal furniture and other household items from Julie Chrisleys' storage unit.  (Nicholson Aff., ¶ 8).  Mark Braddock, on information and belief with the knowledge and assistance of the Defendants Clerie, Arc Auto, and Leslie Braddock, converted and sold the Chrisleys' property in the storage unit valued at between $170,000 and $200,000.  Mark Braddock, with the complicity of the Defendants named in this paragraph, also instructed CAM's employees to sell the contents of Todd Chrisley's office, including desk, chairs, couches, a credenza and lighting, the value of which was approximately $80,000.  (Nicholson Aff., ¶ 9; Chrisley Aff., ¶ 22; Cash Aff., ¶ 7).  Mark Braddock also stole Reward Points from Todd Chrisley's Visa card worth $17,000, and from his American Express card miles worth $60,000.  (Chrisley Aff., ¶ 22; Cash Aff., ¶ 5).

32.

Moreover, Mark Braddock has exhibited harassing and tyrannical behavior against CAM employees and in fact *threatened the life* of Mr. Nicholson

should Nicholson betray the fact that Mark Braddock was conspiring against CAM.  Mr. Nicholson has provided *sworn testimony* of the incident.  (Nicholson Aff., ¶ 4).

33.

Defendants Mark Braddock and Clerie also intentionally interfered with Plainitffs' interstate financial affairs by intercepting from the U.S. mail, diverting and retaining checks to certain of CAM's vendors for weeks and months, thereby intentionally failing to pay CAM's vendors.  (Nicholson Aff., ¶ 5; Cash Aff., ¶ 9). Checks were routinely printed and held within the CAM offices by Defendant Clerie at the direction of Mark Braddock. Mark Braddock and Clerie represented to Fannie Mae and to the Chrisleys that they had issued checks which were paid when in fact they were either intercepted or never sent. The result was that the Federal Government was defrauded of hundreds of thousands of dollars, the theft from vendors who were the rightful recipients of these funds, and the misrepresentation of CAM's financial position to federal auditors, the firm's accountant, and the majority owners of CAM. CAM's Receiver reported finding one box of the checks referenced herein that contained in excess of $266,000 of funds. By intercepting payments intended for Todd Chrisley's personal use, such as mortgage payments due to JPMorgan Chase for Todd

16

Chrisley's home, Mark Braddock caused Todd Chrisley to default on his mortgage.  (Cash Aff., ¶ 9).

34.

Upon further investigation, conducted by a CAM employee accompanied by CAM legal counsel, it was discovered that Mark Braddock also was forging the signatures of both Todd and Julie Chrisley on company checks and personal checks as well as converting funds from CAM to himself, including over $66,000.00 in cash within the past six (6) months from CAM accounts with CAM's bank, JPMorgan Chase.  (Nicholson Aff., ¶ 12; Affidavit of Hayden Pace ("Pace Aff."), submitted in the Superior Court Action and attached hereto as Exhibit "B", at ¶ 8.).

35.

On June 11, 2011, Defendant Mark Braddock made six cash withdrawals on one day of $9,500.00 each, an amount presumably to avoid Federal Suspicious Activity Reporting requirements for cash transactions over $10,000.00.  Mark Braddock was hiding important performance data from the Chrisleys and ordering employees to lie on his behalf.  Furthermore, Mark Braddock was found to be using stamps with Todd and Julie Chrisleys' signature without approval and after specifically being instructed not to do so. In addition, Braddock presented himself as Todd Chrisley to banks and credit card

companies in order to receive card benefits and exert control over his partners. (Nicholson Aff., ¶ 12, Pace Aff., ¶ 8; Chrisley Aff., ¶¶ 15, 26; Affidavit of Donna Cash ("Cash Aff.") submitted in the Superior Court Action and attached hereto as Exhibit "E", ¶ 3).

36.

As a part of their investigation, Plaintiffs also recently discovered that Mark Braddock, in concert with Defendant Clerie, was creating and using false and fraudulent "audits" and financial statements allegedly prepared by the company's certified public accountant and submitted to banks and clients. On information and belief, including the sworn testimony of CAM's accountant who has reviewed the fraudulent documents created in his name and forged with his signature, Defendant Mark Braddock stole the CPA's stationary and a copy of the CPA's signature to cut and paste together these "audited" financial statements. (Affidavit of George R. Grimsley, C.P.A., ("Grimsley Aff."), submitted in the Superior Court Action and a copy of which is attached hereto as Exhibit "C", at ¶¶ 8-11; *see also* Chrisley Aff., ¶ 14). CAM's CPA has confirmed that he did not produce these reports covering the years of 2008, 2009 and 2010, and that the financial representations in those documents are entirely fictitious and fraudulent. Defendants Mark Braddock and Clerie created these statements jointly. Mark Braddock exported the

financials from the company accounting software and annotated the spreadsheets with instructions and suggestions regarding augmentations to be made and sent those instructions to Defendant Clerie who subsequently willfully and knowingly aided Defendant Mark Braddock in the creation of the false statements.  (Id.). Mark Braddock's forgeries included signature cards and other banking documents submitted to interstate banking institutions in connection with financial transactions.  (Chrisley Aff., ¶ 15).  Using those documents in connection with financial and banking transactions is both a Georgia and federal criminal offense.

37.

In addition to the forged accounting and financial documents, Mark Braddock, in league with one or more of the other Defendants including Defendant Clerie, has forged other CAM documents, impersonated Todd Chrisley to unlawfully gain private information, created and maintained false and fraudulent e-mail accounts in Todd Chrisley's and/or CAM's name, communicated with clients and government officials without authority and purporting to be Todd Chrisley or another CAM official.  (Chrisley Aff., ¶ 15). Thus, Mark Braddock, in collusion with or through the instrumentalities of the other Defendants, has been engaged in an ongoing enterprise involving proven acts of forgery, fraud, theft, computer hacking, unlawfully accessing electronic

and other financial data, and criminal banking activity in an effort to undermine and damage Plaintiffs and establish his new, competing business, US Asset, which was formed as a Georgia limited liability company on or about July 11, 2012.  (Chrisley Aff., ¶ 16).

38.

In connection with this entire ongoing fraudulent conspiracy and enterprise alleged in this Complaint, Defendants used computers and interstate wire and mail facilities to transact and perpetuate their fraud.  In addition, Mark Braddock used his knowledge of Todd and Julie Chrisleys' personal and business information, including passwords, to access personal and private electronic data, as well as to impersonate the Chrisleys, steal from the Plaintiffs, and engage in an ongoing pattern of fraud.   (Chrisley Aff., ¶ 15; Cash Aff., ¶ 5).  Defendants' conspiracy to commit fraud as alleged in detail herein resulted in the theft of hundreds of thousands of dollars from Plaintiffs, apparently put to use in trying to establish Defendants' competing business.  (Chrisley Aff., ¶ 15).

39.

Among other damages to Plaintiffs, to date Mark Braddock, together with or through the instrumentalities of the other Defendants, including but not limited to Defendants Clerie, Arc Auto, Grace, Key, Leslie Braddock, and Walker, embezzled at least $672,000 received from clients of CAM, stole

money by falsely endorsing and forging checks made out to Todd Chrisley or his wife for at least $41,200, diverting company funds to himself and into his bank accounts and/or to pay his personal vendors and debts in the amount of at least $170,000, and making unauthorized cash withdrawals from various JPMorgan Chase branches totaling at least $66,500. Mark Braddock gave unauthorized bonuses totally $95,000 in 2012 to Defendant Clerie as part of and to perpetuate this ongoing criminal enterprise, and to Jinger Brown, who is also working with Mark Braddock at US Asset. (Chrisley Aff., ¶ 18).

40.

At least $24,000 of the monies diverted to Defendant Clerie were laundered from CAM accounts and into Key by Defendant Mark Braddock, then paid to Defendant Clerie's husband Roland Clerie via Arc Auto. Mark Braddock has also cost CAM an additional $20,000 per month in expenses, as well as siphoning off monies paid to CAM. None of these withdrawals and diversions of company funds totaling over $1 million were authorized.

41.

Mark Braddock and the other Defendants named herein have knowingly, willfully, and with malicious intent to disrupt CAM's business operations interfered with the United States mails by intercepting and diverting CAM mail.

This illegal interference has in fact caused substantial damage to CAM.  (Cash Aff., ¶ 4).

42.

CAM employees have personally discovered that Mark Braddock unlawfully has in his possession employees' social security information, printed e-mails from employees' personal e-mail accounts, and other personal information.  (Cash Aff., ¶ 12).  Mark Braddock could not have accessed this data without illegally invading and hacking CAM's and its employees' computers with the assistance of PPP, and persons employed by Defendant PPP, including Defendants Stagg and Lindsey.

43.

Mark Braddock destroyed, hid, and spoliated CAM records and documents to attempt to cover up his criminal activity.  (Chrisley Aff., ¶ 23). A majority of the stolen company documents have been housed unsealed within the offices of Defendant Childs per her own admission.

44.

Defendant Mark Braddock also conspired and colluded with officers and employees of Embassy National Bank to divert funds to an account controlled by Defendant Mark Braddock and to prevent Todd and Julie Chrisley, the majority members, from having access to their accounts.  Defendant Mark

22

Braddock further conspired with Embassy Bank to use funds paid by Fannie

Mae to reimburse vendors to pay down loans owed by CAM, to the benefit of

Defendant Mark Braddock.  Embassy Bank  wrongfully denied access to

company accounts to the Chrisleys, despite repeated demands.

45.

In addition, Mark Braddock, in concert with the other Defendants and

employees of Embassy National Bank, has worked to interfere with CAM's

working relationship with its client Fannie Mae.  Mark Braddock and some or all

of the other Defendants have without permission changed the Fannie Mae ACH

funds transfer instructions, used forged documents to communicate with and

change instructions to Fannie Mae regarding sending funds, and directing funds to

Embassy National Bank rather than JPMorgan Chase Bank, transferred funds

from Chase to Embassy without permission by using forged documents,

unauthorized signature stamps, secret communications with Fannie Mae and

Embassy National Bank using fake e-mail accounts created to impersonate Todd

Chrisley, and using signature stamps in lieu of actual signatures to keep from

bringing such illegal changes to Plaintiffs' attention.  (Chrisley Aff., ¶ 29).

46.

Mark Braddock and Clerie also worked to have Todd and Julie Chrisley

removed as check signers on accounts at Embassy Bank in collusion with

Embassy officers and employees and established separate accounts that only he and Clerie could sign at Embassy.  Mark Braddock and Clerie used the fake and forged CAM Operating Agreements in connection with these fraudulent and illegal acts which violate, among other laws, the USA  PATRIOT Act provisions regarding establishing and altering bank accounts.  Mark Braddock in collusion with Embassy officials worked to hide money from the Chrisleys and allowed Embassy to take $630,000 of CAM money which belonged to agents and vendors involved with Fannie Mae's R.E.O. efforts.  (Chrisley Aff., ¶ 29 and Exhibits 12-20 to Chrisley Aff.).

47.

On July 30, 2012, Mark Braddock sent his son to try to take computers and furniture out of the CAM officers in Fulton County.  Being turned away, Mark Braddock tried to resort to force and intimidation.  He was escorted from the building.  Later that day, Clerie's husband, an owner of Defendant Arc Auto, arrived at CAM's offices for the same purposes, and was likewise removed.

48.

Mark Braddock, while working for CAM, also engaged in insurance fraud by submitting false and fraudulent insurance claims for properties he owned in Florida which he falsely claimed had been affected by the BP oil spill.  (Cash Aff., ¶ 6).  Defendants Mark and Leslie Braddock also used Julie Chrisley's real

estate broker's license without her knowledge or consent to engage in a short sale of their residence – selling the property to themselves – based on fraudulent financials and misrepresentations made to two banks.  The sale resulted in the defrauding of Athens First Bank of $800,000.00, as evidence by the deficiency judgment resulting from the short sale noted on Mark Braddock's personal financial statements.  Through this unlawful act, the Braddock's put Julie Chrisley's broker's license at risk.  Julie Chrisley is the broker of record for CAM.

49.

Currently, Defendant Mark Braddock is under a Stalking Protective Order issued by Gwinnett County for the protection of Donna Cash, an employee of CAM and the Chrisleys. Mark Braddock is in violation of that order.  (Chrisley Aff., ¶ 25).  Defendant Mark Braddock is harassing the current employees of CAM and making efforts to cripple the company and the Chrisleys personally.

50.

The attached sworn affidavits and exhibits demonstrate that the Defendants have been and continue to engage in a pattern of criminal behaviors and disregarding any fiduciary duties to CAM.

**Allegations Regarding Defendants Mark Braddock,**

**Stagg, Lindsey and PPP**

51.

Defendant Mark Braddock arranged for PPP, an IT and internet provider which is owned and controlled by Defendant Stagg, to provide computer and VoIP services to CAM. On information and belief, Defendants Mark Braddock and Stagg have a longstanding relationship.

52.

Mark Braddock conspired with PPP Stagg and Lindsey to arrange for PPP to insert a key-stroke tracking device called "Stealth Key Logger" on the CAM computers in order to obtain access to personal e-mail passwords of employees without their knowledge. The theft of these passwords was used to damage a CAM employee personally and represents clear violations of federal law including but not limited to identity theft and internet trespass. (Chrisley Aff., ¶¶ 27, 28).

53.

Upon information and belief, Defendants Mark Braddock, Stagg, Lindsey and PPP also installed recording devices in the Chrisleys' office furniture and home. (Chrisley Aff., ¶ 28).

54.

Defendants Mark Braddock, Stagg, Lindsey and PPP withheld passwords and computer codes from Todd and Julie Chrisley and other CAM employees, ran up the expenses for the establishment and benefit of US Asset, and took money from CAM accounts.  (Chrisley Aff., ¶ 27).

55.

To date, Stagg, Lindsey and PPP, despite repeated demands by Plaintiffs, refuse to surrender company passwords, data, and computer hardware essential to the successful operation of the business to the Chrisleys, presumably because the accounting information held on this hardware would expose additional details regarding the depth of the relationships between various Defendants and their Racketeering schemes.  (Chrisley Aff., ¶ 27).

56.

Defendants Mark Braddock, Stagg, Lindsey and PPP have violated privacy laws, wiretap laws, computer security laws, and have interfered with the operations of CAM's business operations and have invaded the privacy and security of the Chrisleys personally.  (Chrisley Aff., ¶ 28 and Exhibit 11 to Chrisley Aff.).

57.

On August 14, 2012, Plaintiffs Julie Chrisley and CAM (the "TRO

Plaintiffs") filed the Superior Court Action and immediately filed a "Verified

Application and Motion for Temporary Restraining Order, Preliminary

Injunction, and Permanent Injunction" (the "TRO Petition") seeking injunctive

relief restraining Defendants from continuing in their pattern of illegal, fraudulent

activity, as set forth above. (A file-stamped copy of the TRO Petition and

supporting documentation is attached as Exhibit "F").

58.

The TRO Petition was heard on August 15, 2012 by the Honorable Craig

L. Schwall, Presiding Judge of the Superior Court, Fulton County, Georgia.  At

the conclusion of that hearing, Judge Schwall ordered that a Receiver for CAM

be appointed, and that no access to CAM's bank accounts or other financial

affairs be conducted by the parties without the involvement of and approval by

the Receiver. (The "TRO Order") (A certified copy of the TRO Order filed

August 16, 2012, a certified copy of the August 15, 2012 Transcript of

Proceedings regarding the TRO Application, and the Emergency Orders of Judge

Schwall signed and filed September 10, 2012, and signed but not filed September

28, 2012 at the behest of the Receiver Lee Nicholson dealing with problems

obtaining the company servers from Vocal Cloud and Stagg Shelton are attached as Exhibit "G").

### Allegations Regarding Defendants Mark Braddock and Childs

59.

Defendants Mark Braddock and Childs violated the TRO Order, and in doing so provided conclusive proof of their continued pattern of illegal activity. On October 2, 2012, Mark Braddock and his counsel Childs filed in Fulton County Superior Court an "Emergency Motion for Order to Preserve Assets in Receivership", ("Emergency Motion") a file-stamped copy of which is attached as a part of Exhibit "H". An exhibit to that Emergency Motion, and the purported basis for the Motion, are a copy of a wire notification paid to Julie Chrisley and a copy of a cleared check to the escrow account of Scott Sanders, legal counsel for the Receiver that were only accessible through the private and confidential CAM account with JPMorgan Chase Bank (Exhibit "H").

60.

While the TRO Plaintiffs vigorously disputed the Emergency Motion, and presented unrefuted evidence of an Operating Capital Loan to Chrisley Asset Management dated April 30, 2011, signed by Defendant Mark Braddock, whereby Julie Chrisley lent $201,000 to the company (Exhibit "H") and the accompanying UCC Financing Statement filed in Fulton County (Exhibit "H")

showing Julie Chrisley was a secured creditor deserving of payment of a past due note,  the court nevertheless issued an order (Exhibit "H")  arising out of that proceeding. The court's order filed October 3, 2012  is currently on appeal (See Notice of Appeal, Exhibit "H"). Regardless, the Emergency Motion in and of itself conclusively demonstrates that Mark Braddock and Childs continue to unlawfully access CAM's and the Chrisleys' private, secure bank accounts, in violation of state and federal banking laws.  (A file-stamped copy of the TRO Plaintiffs' Amended Notice of Appeal is attached as Exhibit "I" which was filed when the court ex parte communicated with Defendant's counsel and had them prepare an Amended Order without notice and hearing to Plaintiffs).

61.

Mark Braddock and Defendant Childs have recently filed meritless and vexatious contempt motion in Fulton County Superior Court against Plaintiff Chrisley and the court-appointed Receiver Nicholson in an effort to maliciously prosecute actions in bad faith so as to discredit the integrity, reputations, and business interests of these individuals. (A file-stamped copy of the Motion for Contempt is attached as Exhibit "J").  This vexatious pleading (Defendant Childs is currently labeled as a vexatious litigant by another federal court) ignores the supersedeas created by the Notice of Appeal of the underlying order, and is a blatant abuse of the court system without probable cause or merit.

**Allegations Regarding Mark Braddock, Walker,**

**Grace and Watercolor**

62.

Defendants' illegal conspiracy and racketeering enterprise also included a
scheme to unlawfully foreclose under power of sale of property legally or
equitably owned by E Z Title Loans, LLC ("E Z Title") and PDP located at 830
West Conway Drive, NW, Atlanta, Georgia (the "Property") by Mark Braddock,
Key, Grace, and Walker (collectively, the "Foreclosure Defendants").

63.

On or about November 17, 2006, Michael Chrisley, as Trustee of the
Chrisley Family Trust, dated July 28, 2004 (the "Trust"), executed a Security Deed
in favor of Integrity Bank ("Integrity") as security for a $10,000,000.00 note used
to purchase the Property.

64.

On information and belief, the Property's mortgage note serviced by the
Security Deed was promptly "securitized" by Integrity – that is, merged into a
mortgage pool with thousands of other mortgages, and then sold to investors as
shares in the pool.  While this securitization did not affect the servicing role
represented by the Security Deed, it did "split" the note from the Deed – that is, the

servicing interest represented by the Security Deed was no longer connected to the underlying security of the actual mortgage note.

65.

The Security Deed – i.e., the servicing rights to the now-securitized mortgage -- was ultimately assigned to RES-GA Buckhead, LLC ("RES-GA") on or about October 15, 2010, as recorded in Deed Book 49478, Page 354.

66.

The Trust thereafter sold the Property to Pacific Development Partners, LLC ("PDP").  Fulton County tax records show that PDP was the owner of the Property as of January 18, 2011.  Defendant Mark Braddock intentionally and as a part of the scheme alleged herein failed to file a record of the transfer with Fulton County.

67.

At the time RES-GA began the foreclosure process described below, PDP was in the process of selling the Property, and in fact already had an agreement in principal to transfer the Property at a higher price than RES-GA eventually paid for the Property when it sold the Property to *itself* at the foreclosure sale

68.

PDP's prospective sale of the Property was interfered with by the Foreclosure Defendants – and in particular Defendant Mark Braddock -- when they intentionally instituted foreclosure proceedings to interrupt and terminate the sale

in order to obtain the Property for themselves at a price below market value.  The foreclosure sale was conducted knowingly and fraudulently by a party or parties who were not secured creditors in the property or the underlying promissory note.

69.

The Property was sold on September 4, 2012.  RES-GA was the purported high bidder for the Property, selling the Property to itself for $5,500,000.00 – a little more than *half* of what Plaintiffs paid for the Property five years earlier.

70.

On September 8, 2012, Grace and its agent Walker received the listing for the Property from RES-GA.  On information and belief, Grace is managed by the wife of Defendant Mark Braddock, and Mark Braddock therefore has an interest in Grace.  Defendant Mark Braddock has financed the operations of Grace since inception, providing startup capital of $20,000 to Grace and regularly received loan repayments and additional kick-backs from closing commissions earned by Grace and Defendant Walker.  Copies of these checks made out to Defendant Key were discovered in the CAM office of Defendant Clerie and the accounting operations of Key were performed on CAM property by CAM employees at the expense of CAM.  Defendant Clerie is also a licensed real estate agent at Grace.

71.

Grace was operated by Defendant Walker as a front for Defendant Mark Braddock's commandeering of CAM property assignments in direct violation of the agreement for asset management services Defendant Mark Braddock signed between Fannie Mae and CAM, placing CAM's status with its largest client in jeopardy.

72.

The Foreclosure Defendants perpetuated their fraud and conspiracy to enrich themselves at Plaintiffs' expense by unlawfully foreclosing on the Property and then acquiring the Property below market value by "flipping" the Property for a substantial profit.

73.

That is precisely what happened.  As of September 12, 2012, the foreclosed Property was under contract for re-sale.  On information and belief, that re-sale closed on September 27, 2012.

## COUNT I

## Violation Of Georgia Racketeer Influenced and Corrupt Organizations Act (RICO) (O.C.G.A. § 16-14-1, *et seq*.)

## (Against All Defendants)

74.

The averments, facts, allegations, and statements contained in all of Paragraphs 1 through 73 of this Complaint are hereby re-averred and realleged, for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein.

75.

Defendants have conspired and endeavored to violate the Georgia RICO statute, O.C.G.A. § 16-14-4(a), by conspiring and endeavoring, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of an enterprise, real property, and personal property, including money, all in violation of O.C.G.A. § 16-14-4(c).

76.

The Georgia General Assembly has expressly stated its intent that the Georgia RICO Act be "liberally construed" in order to effectuate its remedial purposes. O.C.G.A. § 16-14-2 (b).

77.

Given this liberal construction, Georgia courts have held that Georgia's RICO statute applies to corporations as well as individuals. O.C.G.A. § 16-14-4 (the Georgia RICO Act applies to "any person."); O.C.G.A. § 16-2-22(a)(1) (addressing criminal responsibility for corporations); O.C.G.A. § 1-3-3 (14) (in the

Georgia Code generally, "person" includes a corporation); and O.C.G.A. § 16-1-3

(12) (setting forth the desired application of the term "person" in the definition

section promulgated for use in the title which includes the Georgia RICO Act, the

statute states that the term "person" means an "individual, a public or private

corporation, an incorporated association, government, government agency,

partnership, or unincorporated association").

78.

Pursuant to Georgia's RICO statute, a "Pattern of racketeering activity"

means:

> Engaging in at least two acts of racketeering activity in
> furtherance of one or more incidents, schemes, or
> transactions that have the same or similar intents, results,
> accomplices, victims, or methods of commission or
> otherwise are interrelated by distinguishing
> characteristics and are not isolated incidents, provided at
> least one of such acts occurred after July 1, 1980, and
> that the last of such acts occurred within four years,
> excluding any periods of imprisonment, after the
> commission of a prior act of racketeering activity.
> O.C.G.A. § 16-14-3 (8).

79.

Pursuant to O.C.G.A. § 16-14-3 (9)(A), "Racketeering activity" means to

"commit, to attempt to commit, or to solicit, coerce, or intimidate another person to

commit any crime which is chargeable by indictment under the following laws of

this state:" theft (O.C.G.A. § 16-14-3 (9)(A)(ix), attempting to influence a witness

36

(O.C.G.A. § 16-14-3 (9)(A)(xiv), unlawful use or distribution of financial records

(O.C.G.A. § 16-14-3 (9)(A)(xxiii), violations of the Georgia Computer Systems

Protection Act" (O.C.G.A. § 16-14-3 (9)(A)(xxviii), violations relating to records

and reports of currency transactions (O.C.G.A. § 16-14-3 (9)(A)(xxxv), fraudulent

activity relating to identification documents and information (O.C.G.A. § 16-14-3

(9)(A)(xxxvi), and insurance fraud (O.C.G.A. § 16-14-3 (9)(A)(xxxvii), and

conduct involving residential mortgage fraud (O.C.G.A. 16-14-3(9)(A)(xl).

80.

Georgia's RICO statute also includes, as predicate acts, a wide range of

federal statutes, incorporating by reference into its definition of "racketeering

activity" those activities proscribed by 18 U.S.C. § 1961(1)(A)-(D) (the federal

RICO statute).  These acts include:

> [A]ny act which is indictable under any of the following
> provisions of title 18, United States Code: . . . . [S]ection
> 1028 (relating to fraud and related activity in connection
> with identification documents), section 1029 (relating to
> fraud and related activity in connection with access
> devices), . . .  (relating to mail fraud), section 1343
> (relating to wire fraud), section 1344 (relating to financial
> institution fraud), . . . section 1951 (relating to
> interference with commerce, robbery, or extortion),
> section 1952 (relating to racketeering), . . . section 1956
> (relating to the laundering of monetary instruments),
> section 1957 (relating to engaging in monetary
> transactions in property derived from specified unlawful
> activity), . . . [and] section 1960 (relating to illegal
> money transmitters).  18 U.S.C. § 1961(1)(A)-(D).

81.

Defendants have conspired and endeavored to violate the Georgia RICO statute, O.C.G.A. § 16-14-4(b), as persons employed by or associated with any enterprise, that is, an association-in-fact of Defendants, to conduct or participate in, directly or indirectly, such enterprise through a pattern of racketeering activity, all in violation of O.C.G.A. § 16-14-4(c).

82.

Defendants, and each of them, constitute an "enterprise" within the meaning of O.C.G.A. § 16-14-3(6), which affects commerce in the State of Georgia and elsewhere.  Such "association in fact" is an ongoing organization organized for the common purpose of perpetrating Mark Braddock's and the other Defendants' fraudulent and illegal scheme of obtaining and converting to Defendants' use the property and other assets of Plaintiffs.  Such enterprise is controlled by Mark Braddock, by and through the persons and instrumentalities of the other Defendants, and regularly carries out its function of perpetrating Defendants' fraudulent and illegal schemes.

83.

The pattern of racketeering activity alleged above included at least two acts of "racketeering activity", including wire fraud, bank fraud, computer fraud, identity theft, theft, conversion, common law fraud, mail fraud, and other illegal

acts alleged herein, all of which are defined as "racketeering activity" under

O.C.G.A. § 16-14-3(9)(A), and all of which caused and continue to cause

substantial harm to Plaintiffs.

84.

Defendants, and each of them, are employed by or associated with an

"enterprise" described in this Complaint.

85.

Defendants, and each of them, conducted or participated, directly or

indirectly, in the conduct of the affairs of the enterprise through at least two acts of

"racketeering activity," as defined in Georgia's RICO statute.

86.

Specifically, Defendants have conspired to and endeavored to engage in, and

have repeatedly committed, the following criminal activities under Georgia and

federal law, which constitute a pattern of racketeering activity under O.C.G.A. §

16-14-3:

   a.  Theft in violation of OCGA § 16-8-1 *et seq.*;

   b.  Mail fraud in violation of 18 U.S.C. §1341;

   c.  Influencing witnesses in violation of O.C.G.A. § 16-10-93;

   d.  Tampering with evidence in violation of O.C.G.A. §16-10-94;

   e.  Financial institution fraud in violation of 18 U.S.C. §1344;

f.  Engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957;

g.  Fraud by wire, radio, or television (wire fraud) in violation of 18 U.S.C. § 1343;

h.  Georgia statutory theft and common law fraud in violation of O.C.G.A. §§ 16-14-3(A)(9)(ix) and 16-8-3;

i.  Numerous incidents of theft by taking, theft by deception, theft by receiving and theft by conversion in violation of, *inter alia*, O.C.G.A. §§ 16-8-2, 16-8-3, 16-8-4(a), 16-8-7 and 16-14-3(9)(A)(ix);

j.  Aggravated identity theft, authentication features, and information in violation of 18 U.S.C. § 1029A;

k.  Laundering of Monetary Instruments in violation of 18 U.S.C. § 1956;

l.  Tampering with a witness, victim or an informant in violation of 18 U.S.C. § 1512;

m.  Interference with commerce by threats or violence (Hobbs Act) in violation of 18 U.S.C. § 1951; and

n.  Residential mortgage fraud in violation of O.C.G.A. § 44-14-161, *et seq*.

87.

In furtherance of such conspiracy to violate the Georgia RICO statute, in violation of O.C.G.A. § 16-14-4(c), Defendants knowingly and willlfully

committed fraud and obstruction of justice under federal law and influencing

witnesses and tampering with evidence in violation of Georgia law.

88.

As a result of Defendants' actions, Plaintiffs have suffered and are

continuing to suffer injury including, but not limited to, substantial loss of income,

deprivation of property and other assets, loss of business opportunities,

interference with business relationships.

89.

In addition, Plaintiff Julie Chrisley, as a direct and proximate result of

Defendants' actions, has suffered and is continuing to suffer injury including

emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of

enjoyment of life, and other non-pecuniary losses.

90.

Plaintiffs seeks to redress the wrongs alleged herein, and this suit for

equitable, compensatory, and punitive damages, is Plaintiffs' only means of

securing adequate relief.

91.

Plaintiffs have been injured by reason of such violations of O.C.G.A. § 16-

14-4, and therefore are entitled to three times their actual damages sustained,

punitive damages, plus all attorneys' fees in the trial and appellate courts and costs

of investigation and litigation reasonably incurred, pursuant to O.C.G.A.

§ 16-14-6(b).

WHEREFORE, with respect to Count One, Plaintiffs respectfully request

that this Court:

(a)     Enter judgment in favor of Plaintiffs and against Defendants in an amount

sufficient to compensate Plaintiffs for their actual damages;

(b)     Award Plaintiffs three times the amount of their actual damages;

(c)     Award Plaintiffs punitive damages as a result of Defendants' intentional

misconduct;

(d)     Award Plaintiffs all their reasonable attorneys' fees and costs for

bringing this action;

(e)     Afford Plaintiffs a trial by jury;

(f)     That Defendants and any of their directors, officers, agents, servants,

and employees, and those persons and entities in active concert or

participation with them, be preliminarily and permanently enjoined

from:

(i) attempting, directly or indirectly, to obtain any information

from Plaintiffs regarding any of Plaintiffs' financial information or business

data;

(ii) using the name or identity of CAM or any CAM employee or officer for any purpose;

(iii) contacting Plaintiffs for any reason;

(iv) contacting any CAM client or make any representations to any third party regarding CAM and/or any employee or officer of CAM;

(v) possessing any confidential information obtained from Plaintiffs, regardless of form or manner of storage;

(vi) disposing of any confidential business, financial or personal information relating or belonging to Plaintiffs or any employee or agent of Plaintiffs other than by returning it to Plaintiffs;

(g)    That Defendants be required to account for and to disgorge all profits obtained as a result of their fraud and other unlawful activity as alleged herein; and

(h)    That Plaintiffs be granted such other and further legal and equitable relief against Defendants as the Court deems appropriate, including (i) an accounting of each and every person or entity that has been provided with Plaintiffs' confidential information, and (ii) an award to Plaintiffs of costs and reasonable attorneys' fees incurred in bringing this action.

## COUNT II

## Tortious Interference with Business Relations and

## Prospective Business Opportunities

**(Against Defendants Mark Braddock, Clerie, Key, PPP, Lindsey and Stagg)**

92.

The averments, facts, allegations, and statements contained in all of
Paragraphs 1 through 91 of this Complaint are hereby re-averred and realleged, for
all purposes, and incorporated herein with the same force and effect as if set forth
verbatim herein.

93.

Defendants Mark Braddock, Clerie, Key, PPP, Childs, Lindsey, and Stagg
(the "Tortious Interference Defendants") intentionally interfered with Plaintiffs
Julie Chrisley's and CAM's ("Tort Plaintiffs") ongoing business operations,
relationships with present and prospective clients, and present and prospective
business opportunities by intentionally, knowingly and willfully engaging in the
unlawful conduct set forth in this Complaint.

94.

The Tortious Interference Defendants acted without privilege.

95.

As a direct and proximate result of the Tortious Interference Defendants'
wrongful acts, the Tort Plaintiffs have suffered severe and ongoing damage,
including direct financial loss, reputational damage, damage to client relations, loss
by reason of Mark Braddock's theft, and lost prospective business opportunities.

44

96.

As a result of Defendants' actions, the Tort Plaintiffs have suffered and are continuing to suffer injury including, but not limited to, substantial loss of income, and prospective opportunities.  In addition, Plaintiff Julie Chrisley as a result of these Defendants' actions, has suffered and is continuing to suffer injury including emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

WHEREFORE, with respect to Count Two, the Tort Plaintiffs respectfully request that this Court:

(a)     Enter judgment in favor of Plaintiffs and against the Tortious Interference Defendants in an amount sufficient to compensate Plaintiffs for their actual damages;

(b)     Award Plaintiffs punitive damages as a result of Defendants' intentional misconduct;

(c)     Award Plaintiffs all their reasonable attorneys' fees and costs for bringing this action;

(d)     Afford Plaintiffs a trial by jury; and

(e)     Such other and further relief as this Court deems proper and just.

## COUNT III

## Breach of Fiduciary Duty

45

**(Against Defendants Mark Braddock and Clerie)**

97.

The averments, facts, allegations, and statements contained in all of Paragraphs 1 through 96 of this Complaint are hereby re-averred and realleged, for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein.

98.

Defendants Mark Braddock and Clerie (the "Fiduciary Duty Defendants") owed Plaintiffs CAM and Julie Chrisley a fiduciary duty to maintain the absolute trust, loyalty, and confidence that CAM, PDP and their officers reposed in them.

99.

By engaging in the fraudulent and unlawful acts alleged in this Complaint, the Fiduciary Duty Defendants breached that duty, including by defrauding Plaintiffs, stealing physical and electronic data, establishing a competing business, and otherwise acting against the best interest of Plaintiffs, as alleged in detail in Plaintiffs' RICO allegations.

100.

As a result of Defendants' actions, Plaintiffs have suffered and are continuing to suffer injury including, but not limited to, substantial loss of income, and prospective opportunities.  In addition, Plaintiff Julie Chrisley as a result of these Defendants' actions has suffered and is continuing to suffer injury including emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

WHEREFORE, with respect to Count Three, Plaintiffs respectfully request that this Court:

(a)     Enter judgment in favor of Plaintiffs and against the Breach of Fiduciary Duty Defendants in an amount sufficient to compensate Plaintiffs for their actual damages;

(b)     Award Plaintiffs punitive damages as a result of Defendants' intentional misconduct;

(c)     Award Plaintiffs all their reasonable attorneys' fees and costs for bringing this action;

(d)     Afford Plaintiffs a trial by jury; and

(e)     Such other and further relief as this Court deems proper and just.

## COUNT IV

### Trespass to Chattels

### (Against Defendants Mark Braddock, PPP, Stagg, Lindsey and Clerie)

47

101.

The averments, facts, allegations, and statements contained in all of Paragraphs 1 through 100 of this Complaint are hereby re-averred and realleged, for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein.

102.

Defendants Mark Braddock, PPP, Stagg, Lindsey and Clerie (the "Tresspass Defendants") committed the tortious act of trespass to chattels by violating and invading Plaintiffs' computers and misappropriating confidential personal and financial data.

103.

The computers, computer networks, and computer services that operate Plaintiffs' accounts are Plaintiffs' personal property.

104.

As set forth in detail above, without valid authorization, the Trespass Defendants have intentionally and repeatedly made use of Plaintiffs' proprietary computer system for their own economic benefit and in violation of Plaintiffs' rights.

105.

The Trespass Defendants' conduct constitutes trespass to Plaintiffs' chattels.

106.

Plaintiffs' possessory interest in their computers, computer networks, and computer services that operate Plaintiffs' online accounts, and Plaintiffs' business and personal affairs has been injured by the Trespass Defendants' unauthorized access of Plaintiffs' computer networks and Plaintiffs have been damaged as a result in an amount to be proven at trial.

WHEREFORE, with respect to Count Four, Plaintiffs respectfully request that this Court:

(a)    Enter judgment in favor of Plaintiffs and against the Trespass Defendants in an amount sufficient to compensate Plaintiffs for their actual damages;

(b)    Award Plaintiffs punitive damages as a result of Defendants' intentional misconduct;

(c)    Award Plaintiffs all their reasonable attorneys' fees and costs for bringing this action;

(d)    Afford Plaintiffs a trial by jury; and

(e)    Such other and further relief as this Court deems proper and just.

## COUNT V

## Federal Computer Fraud and Abuse Act - 18 U .S.C. § 1030

## (Against Defendants Mark Braddock, PPP, Stagg, Lindsey and Clerie)

107.

The averments, facts, allegations, and statements contained in all of Paragraphs 1 through 106 of this Complaint are hereby re-averred and realleged, for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein.

108.

The computers, computer networks, and computer services that operate Plaintiffs' accounts are "protected computers" as defined in 18 U.S.C. § 1030(e)(2), and contain private and confidential financial and banking information which affects interstate commerce.

109.

Federal law prohibits anyone from "intentionally accesses[ing] a computer without authorization or exceeds authorized access, and thereby obtains . . . information contained in a financial record or a financial institution." 18 U.S.C. § 1030(a)(2).

110.

As alleged in detail above, Defendants Mark Braddock, PPP, Stagg, Lindsey and Clerie (the "Computer Fraud Defendants") intentionally and without authorization accessed Plaintiffs' financial and banking information on Plaintiffs' protected computers and obtained confidential information, which the Computer Fraud Defendants used to perpetuate their unlawful racketeering enterprise.

111.

By their unauthorized accessing of Plaintiffs' computers and/or through their improper hacking, the Computer Fraud Defendants intentionally accessed Plaintiffs' protected computers without authorization, and thereby obtained confidential information from Plaintiffs' protected computers. 18 U.S.C. § 1030(a)(2)(C).

112.

The Computer Fraud Defendants' conduct has caused Plaintiffs to suffer substantial loss or damages in an amount to be proven at trial but in any event in excess of $100,000.00.  Further, the Computer Fraud Defendants' conduct causes a threat to public safety. 18 US C. §1030 (a)(5)(B)(i) and (iv).

113.

The Computer Fraud Defendants' activity has occurred within the last two (2) years and constitutes a violation of the Computer Fraud and Abuse Act, 18 U.S .C. § 1030(g), and Plaintiffs are entitled to damages and injunctive and equitable relief against the Computer Fraud Defendants under the Act.

WHEREFORE, with respect to Count Five, Plaintiffs respectfully request that this Court:

(a)    Enter judgment in favor of Plaintiffs and against the Computer Fraud

Defendants in an amount sufficient to compensate Plaintiffs for their actual

damages;

(b)    Afford Plaintiffs a trial by jury;

(c)    Enjoin the Computer Fraud Defendants from accessing without

authorization Plaintiffs' computers;

(d)    Restore Plaintiffs full use of and access to their computers and on-line

accounts;

(e)    Destroy or return to Plaintiffs any unlawfully obtained information; and

(f)    Grant Plaintiffs any other relief that this Court deems just and proper .

**COUNT VI**

**Fraud and Accounting**

**(Against All Defendants)**

114.

The averments, facts, allegations, and statements contained in all of

Paragraphs 1 through 113 of this Complaint are hereby re-averred and realleged,

for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein.

### 115.

By accessing Plaintiffs' computers' online accounts without authorization, pretending to be one or more of the Plaintiffs, forging Plaintiffs' signatures and other corporate and banking documentation, and engaging in the other acts alleged in detail in this Complaint, Defendants have made numerous false statements of fact and have been engaged in an ongoing fraudulent enterprise of which Plaintiffs were the victims.

### 116.

These statements and course of conduct were known by Defendants to be false and fraudulent when made.

### 117.

The false and fraudulent acts and statements made by Defendants were made for the purpose of inducing Plaintiffs to act in reliance thereon.

### 118.

Plaintiffs justifiably relied and acted or omitted to act upon Defendants' false and fraudulent acts and statements, and have been irreparably harmed and damaged as a result.

### 119.

Defendants' actions and statements as alleged herein constitute an actionable fraud.

120.

If Defendants are not enjoined, they will continue to engage in fraudulent conduct, causing further irreparable harm to Plaintiffs.

121.

Because of Defendants' fraud, Defendants should provide an accounting for, and should be ordered to disgorge, any and all profits wrongfully obtained as a result of their fraud.

122.

Because Defendants have acted willfully, wantonly, and with malice, Plaintiffs are entitled to punitive damages in an amount sufficient to deter Defendants from engaging in similar conduct in the future.

WHEREFORE, with respect to Count Six, Plaintiffs respectfully request that this Court:

(a)     Enter judgment in favor of Plaintiffs and against Defendants in an amount sufficient to compensate Plaintiffs for their actual damages;

(b)     Award Plaintiffs punitive damages as a result of Defendants' willful, wanton, and malicious misconduct;

(c)     Afford Plaintiffs a trial by jury;

(d)     Enjoin Defendants from fraudulently obtaining confidential financial, personal and business information from Plaintiffs;

(e)     Require Defendants to account for and to disgorge all profits obtained as a result of their fraud; and

(f)     Grant Plaintiffs any other relief that this Court deems just and proper .

relief that this Court deems just and proper .

## COUNT VII

## Violations of the Stored Communications Act (18 U.S.C. § 2701, *et seq.*)

## (Against Defendants Mark Braddock, PPP, Lindsey, Clerie and Stagg)

### 123.

The averments, facts, allegations, and statements contained in all of Paragraphs 1 through 122 of this Complaint are hereby re-averred and realleged, for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein.

### 124.

The federal Stored Communications Act (the "SCA") broadly defines an "electronic communication" as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects

interstate or foreign commerce . . ."  18 U.S.C. § 2711(1); 18 U.S.C. § 2510(12).

125.

Pursuant to the SCA, "electronic storage" means any "temporary storage of a wire or electronic communication incidental to the electronic transmission thereof." 18 U.S.C. § 2711(1); 18 U.S.C. § 2510(17)(A).  This type of electronic storage includes communications in intermediate electronic storage that have not yet been delivered to their recipient.

126.

Congress enacted the SCA to prevent "unauthorized persons deliberately gaining access to, and sometimes tampering with, electronic or wire communications that are not intended to be available to the public."  Senate Report No. 99-541, S. REP. 99-541, 35, 1986 U.S.C.C.A.N. 3555, 3589.

127.

As such, the SCA mandates, among other things, that it is unlawful for a person to obtain access to stored communications on another's computer system without authorization. 18 U.S.C. § 2701(a).

128.

The Defendants named in this count violated 18 U.S.C. § 2701(a)(1) by intentionally accessing Plaintiffs' communications without authorization and obtaining and/or altering authorized access to a wire or electronic communication while in electronic storage, as alleged in detail above.

129.

Defendants violated 18 U.S.C. § 2701(a)(2) because they intentionally exceeded authorization to access Plaintiffs' communications and obtained, altered, or prevented authorized access to a wire or electronic communication while in electronic storage.

130.

As a result of Defendants' conduct described herein, and its violation of 18 U.S.C. § 2701, Plaintiffs have suffered injuries.

WHEREFORE, with respect to Count Seven, Plaintiffs respectfully request that this Court:

(a)     Enjoin Defendants' conduct described herein; and

(b)     Award the maximum statutory and punitive damages available under 18 U.S.C. § 2707.

## COUNT VIII

## Violations of the Electronic Communications

## Privacy Act (18 U.S.C. § 2510, *et seq*.)

**(Against Defendants Mark Braddock, Private Peering Point, Clerie and**

**Stagg)**

131.

The averments, facts, allegations, and statements contained in all of

Paragraphs 1 through 130 of this Complaint are hereby re-averred and realleged,

for all purposes, and incorporated herein with the same force and effect as if set

forth verbatim herein.

132.

The Electronic Communications Privacy Act**,** 18 U.S.C. § 2510 *et seq.* (the

"ECPA") defines "electronic communications system" as any wire, radio,

electromagnetic, photooptical or photoelectronic facilities for the transmission of

wire or electronic communication, and any computer facilities or related electronic

equipment for the electronic storage of such communications. 18 U.S.C. §

2510(14).

133.

The ECPA broadly defines the "contents" of a communication, when used

with respect to any wire, oral, or electronic communications, to include any

information concerning the substance, purport, or meaning of that communication.

18 U.S.C. § 2510(8). "Contents," when used with respect to any wire or oral

communication, includes any information concerning the identity of the parties to such communication or the existence, substance, purport, or meaning of that communication.

134.

The Defendants named in this count violated 18 U.S.C. § 2511(1)(a) by intentionally intercepting and endeavoring to intercept Plaintiffs' wire and/or electronic communications to, from, and within their telephones and computers, as alleged in detail above.

135.

Defendants also violated 18 U.S.C. § 2511(1)(d) by intentionally using, and endeavoring to use the contents of Plaintiffs' wire and/or electronic communications to profit from their unauthorized banking activities, their establishment of a competing business, and by interfering with and attempting to abscond with Plaintiffs' clients and prospective business opportunities.

136.

Defendants intentionally obtained and/or intercepted, by device or otherwise, these wire and/or electronic communications, without the knowledge, consent or authorization of Plaintiffs.

137.

Plaintiffs suffered harm as a result of Defendants' violations of the ECPA.

WHEREFORE, with respect to Count Eight, Plaintiffs respectfully request that this Court:

(a)     Grant preliminary, equitable and declaratory relief as may be appropriate;

(b)     Award the sum of the actual damages suffered and the profits obtained by Defendants as a result of their unlawful conduct, or statutory damages as authorized by 18 U.S.C. § 2520(2)(B), whichever is greater; and

(c)     Award punitive damages and reasonable costs and attorneys' fees.

## COUNT IX

### Violations of the Georgia Computer Systems

### Protection Act (O.C.G.A. § 16-9-93, *et seq.*)

### (Against Defendants Mark Braddock, Stagg, Clerie, Lindsey and PPP)

138.

The averments, facts, allegations, and statements contained in all of

Paragraphs 1 through 137 of this Complaint are hereby re-averred and realleged,

for all purposes, and incorporated herein with the same force and effect as if set

forth verbatim herein.

139.

The Georgia Computer Systems Protection Act ("Computer Systems Act")

(O.C.G.A. § 16-9-93, *et seq.*) sets forth criminal offenses of computer theft,

computer trespass, and computer invasion of privacy, which also provides for civil

liability and a civil remedy.  O.C.G.A. § 16-9-93(g)(1).

140.

Pursuant to the Computer Systems Act, "[c]omputer theft" is committed by

one "who uses a computer or computer network with knowledge that such use is

without authority and with the intention of . . . taking, obtaining, or converting

property of another."  O.C.G.A. § 16-9-93(a)(1)–(3).  Similarly, a person commits

computer trespass when he or she "uses a computer or computer network with

knowledge that such use is without authority and with the intention of deleting any

computer program or data; obstructing or interfering with use of a computer

program or data; or altering, damaging, or causing to malfunction a computer,

computer network, or computer program.  O.C.G.A. § 16-9-93(b)(1)–(3).  A

person commits computer invasion of privacy when he or she uses a computer or

computer network "with the intention of examining any employment, medical,

salary, credit, or any other financial or personal data relating to any other person

with knowledge that such examination is without authority."  O.C.G.A. § 16-9-

93(c).

141.

Georgia courts have found that "these three computer offenses include at

least the following elements: that the proscribed actions be taken "with

knowledge" that the use of the computer or the examination of the other person's

data was "without authority" and that the actions be taken with the requisite

intent."  *Sitton v. Print Direction, Inc*., 312 Ga. App. 365, 368 (2011).

142.

Each of these elements have been met, as alleged in detail in this Complaint.

As alleged above, and incorporated by reference herein, Defendants Mark

Braddock, Stagg, Clerie, Lindsey and PPP (the "Computer Systems Defendants")

on repeated occasions have improperly and without authority accessed Plaintiffs'

computers, computer systems and other electronic storage devices, obtaining

private personal and financial data which they converted to their own use.

143.

The Computer Systems Defendants have also interfered with and obstructed

Plaintiffs' use of their computer systems, by, among other things, withholding

passwords and other access information, in violation of O.C.G.A. § 19-9-93(b) and

(e).  Defendant Mark Braddock also conspired with Defendants PPP and Stagg

to arrange for PPP to insert a key tracking device on the CAM computers in order

to obtain access to personal e-mail, in violation of O.C.G.A. § 19-9-93(c).

(Chrisley Aff., ¶¶ 27, 28).

144.

The Computer Systems Act provides that "[a]ny person whose property or

person is injured by reason of a violation of any provision of this article may sue

therefor and recover for any damages sustained and the costs of suit.  Without

limiting the generality of the term, 'damages' shall include loss of profits and

victim expenditure."  O.C.G.A. § 16-9-93(g)(1).  Moreover, the Act states that

"[t]he provisions of this article shall not be construed to limit any person's right to

pursue any additional civil remedy otherwise allowed by law."  O.C.G.A. § 16-9-

93(g)(3).

WHEREFORE, with respect to Count Nine, Plaintiffs respectfully request that this Court:

(a)     Award the sum of the actual damages suffered and expenditures made by Plaintiffs including attorneys' fees as a result of the Computer Systems Defendants' unlawful conduct, or statutory damages as authorized by O.C.G.A. § 16-9-93(g), whichever is greater; and

(b)     Such other further legal and equitable relief against Defendants as the Court deems appropriate, including an accounting of each and every person or entity that has been provided with Plaintiffs' confidential information, and the return of all such data and an order requiring that Defendants provide complete and immediate access to their computer systems.

## COUNT X

## Forgery

## (Against Defendants Mark Braddock and Clerie)

### 145.

The averments, facts, allegations, and statements contained in all of Paragraphs 1 through 144 of this Complaint are hereby re-averred and realleged, for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein.

146.

Georgia law provides a cause of action and remedy where one has breached a legal duty.  Pursuant to O.C.G.A. § 51-1-6, "[w]hen the law requires a person to perform an act for the benefit of another or to refrain from doing an act which may injure another, although no cause of action is given in express terms, the injured party may recover for the breach of such legal duty if he suffers damage thereby."

147.

"The essential element of forgery consists in the intent, when making the signature, or procuring it to be made, to pass it off fraudulently as the signature of another party than the one who actually makes it. . . . If this intent thus to personate another exists, the instrument is still a forgery, even if the name affixed is actually the same name with that borne by the party who signs it. So there may be forgery by the use of a fictitious name as well as by the use of a person's own name, if the intent exists to commit a fraud by deception as to the identity of the person who uses the name." *Moore v. Bank of Dahlonega,* 82 Ga. App. 142, 147 (60 S.E.2d 507) (1950) (recognizing a private cause of action for fraudulently drawn banking instruments).

148.

As alleged above, Defendants Mark Braddock and Clerie (the "Forgery Defendants") repeatedly breached their legal duties to Plaintiffs when they

65

knowingly, intentionally, and maliciously forged Todd and Julie Chrisleys'

signatures on bank, financial, corporate and other legal instruments.  The Forgery

Defendants forged or caused to be forged the Chrisleys' signatures (including by

using signature stamps) without authority and after specifically being instructed

not to do so.

149.

As a result of the Forgery Defendants' unlawful conduct, Plaintiffs have

suffered substantial harm, including both economic damages, and, in the case of

Plaintiff Julie Chrisley, emotional pain and suffering.

WHEREFORE, with respect to Count Ten, Plaintiffs respectfully request

that this Court:

(a)    Enter judgment in favor of Plaintiffs and against the Forgery Defendants in

an amount sufficient to compensate Plaintiffs for their actual damages;

(b)    Award Plaintiffs punitive damages as a result of the Forgery Defendants'

intentional misconduct;

(c)    Award Plaintiffs all their reasonable attorneys' fees and costs for

bringing this action;

(d)    Afford Plaintiffs a trial by jury; and

(e)    Such other and further relief as this Court deems proper and just.

## Count XI

## Attorneys' Fees and Costs

## (Against All Defendants)

150.

The averments, facts, allegations, and statements contained in all of Paragraphs 1 through 149 of this Complaint are hereby re-averred and realleged, for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein.

151.

All defendants have acted in bad faith, willfully and maliciously, and have caused Plaintiffs unnecessary trouble and expense, and are therefore liable for punitive damages pursuant to O.C.G.A. § 51-12-5.1 and other applicable authority.

152.

As a result of the Defendants' conduct, Plaintiffs are entitled to attorney's fees and costs related to this litigation pursuant to O.C.G.A. § 13-6-11.

## PRAYER FOR RELIEF

WHEREFORE, with respect to each and every Count in this Complaint, Plaintiffs respectfully request that this Court:

(a)    Enter judgment in favor of Plaintiffs and against Defendants in an amount sufficient to compensate Plaintiffs for their actual damages;

(b)     Award Plaintiffs three times the amount of their actual damages;

(c)     Award Plaintiffs punitive damages as a result of Defendants' intentional

misconduct;

(d)     Award Plaintiffs all their reasonable attorneys' fees and costs for

bringing this action;

(e)     Afford Plaintiffs a trial by jury;

(f)     That Defendants and any of their directors, officers, agents, servants,

and employees, and those persons and entities in active concert or

participation with them, be preliminarily and permanently enjoined

from:

     (i) attempting, directly or indirectly, to obtain any information

     from Plaintiffs regarding any of Plaintiffs' financial information or business

data;

     (ii) using the name or identity of CAM or any CAM employee or

officer for any purpose;

     (iii) contacting Plaintiffs for any reason;

     (iv) contacting any CAM client or make any representations to any third

party regarding CAM and/or any employee or officer of CAM;

     (v) possessing any confidential information obtained from Plaintiffs,

regardless of form or manner of storage;

(vi) disposing of any confidential business, financial or personal information relating or belonging to Plaintiffs or any employee or agent of Plaintiffs other than by returning it to Plaintiffs;

(g)     That Defendants be required to account for and to disgorge all profits obtained as a result of their fraud and other unlawful activity as alleged herein; and

(h)     That Plaintiffs be granted such other and further legal and equitable relief against Defendants as the Court deems appropriate, including

(i)       an accounting of each and every person or entity that has been provided with Plaintiffs' confidential information, and

(ii)    an award to Plaintiffs of costs and reasonable attorneys' fees incurred in bringing this action.

## JURY DEMAND

PLAINTIFFS DEMAND A TRIAL BY JURY.

Respectfully submitted,

This 10th day of October, 2012.

THOMPSON LAW GROUP, LLC

_/s/ Robert T. Thompson, Jr._
Robert T. Thompson, Jr.
Georgia Bar No. 709750
H. Kirk Henson
Georgia Bar No. 348088
Jefferson Adams
Georgia Bar No. 003523

Mailing Address:
THOMPSON LAW GROUP, LLC
P.O. Box 53484
Atlanta, Georgia 30355
Telephone: (404) 816-0500
Facsimile: (404) 816-6856
rthompson@thomlaw.net
khenson@thomlaw.net
jadams@thomlaw.net

Street Address:
THOMPSON LAW GROUP, LLC
Ivy Place
3423 Piedmont Road, Suite 530
Atlanta, Georgia 30305
*Attorneys for Plaintiffs Julie Chrisley,*
*individually and as majority owner of*
*Chrisley Asset Management, LLC,*
*and Pacific Development Partners,*
*LLC*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1

The undersigned hereby certifies that the foregoing document has been prepared in accordance with the font type and margin requirements of Local Rule 5.1 of the Northern District of Georgia, using a font type of Times New Roman and a point size of 14.

Respectfully submitted,

This 10th day of October, 2012.

THOMPSON LAW GROUP, LLC

*/s/ Robert T. Thompson, Jr.*
Robert T. Thompson, Jr.
Georgia Bar No. 709750