UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JULIE CHRISLEY, individually and
in her capacity as the majority owner
of CHRISLEY ASSET
MANAGEMENT, LLC,

        Plaintiff,

    v.

MARK BRADDOCK, KEY ASSET
SOLUTIONS, LLC, ALINA CLERIE,
ARC AUTO BROKERS, LLC,

        Defendants.

CIVIL ACTION NO.

1:12-CV-3524-CAP

## O R D E R

This matter is before the court on Kimberly A. Childs's amended

motion for sanctions [Doc. No. 98].  Childs, who is no longer a party to this

action, filed a motion for Federal Rule of Civil Procedure 11 sanctions prior to

her dismissal.  She seeks Rule 11 sanctions against Julie Chrisley, Robert T.

Thompson, Jr., and the Thompson Law Group, LLC (hereinafter "the TLG").[1]

---

[1] Childs initially indicated in the amended motion for sanctions that she
sought sanctions against Chrisley, Thompson, H. Kirk Henson, Jefferson
Adams, and the TLG.  Childs has withdrawn her motion as to Henson and
Adams.  Childs's Reply Mem. of Law in Supp. of Am. Mot. for Sanctions at 11
[Doc. No. 114].

## I.      Introduction

Childs is an attorney licensed to practice in Georgia.  She represents Mark Braddock in several state court matters brought by Chrisley on behalf of companies in which she claims ownership.  The state court lawsuits are related to this matter.  The related lawsuits include *Julie Chrisley, Chrisley Asset Management, LLC v. Mark Braddock and Alina Clerie*, Superior Court of Fulton County, State of Georgia, CAFN: 2012-CV-219963 and *EZ Title Loans, LLC and Pacific Development Partners, LLC v. Grace Realty Group, LLC, Key Asset Solutions, LLC, RES-GA Buckhead, LLC, Mark Braddock, individually, and Valencia Walker, individually*, Superior Court of Fulton County, State of Georgia, CAFN: 2012-CV-222070.  Chrisley filed the two related state court lawsuits prior to filing the initial complaint in federal court.  Thompson and the TLG represented Chrisley in the related state court lawsuits at the time the initial complaint was filed with this court.  Childs sought dismissal from the federal lawsuit and sanctions for being named as a defendant in the federal lawsuit.

### A.     Procedural History

On October 9, 2012, Chrisley filed this action asserting federal and state law causes of action against Childs and other defendants [Doc. No. 1]. On November 8, 2012, Childs filed a motion to dismiss the initial complaint

pursuant to Rule 12(b)(6) [Doc. No. 18].  Childs filed a motion for Rule 11 sanctions on December 7, 2012 [Doc. No. 34].

Counsel for the plaintiffs,[2] Thompson, Jefferson L. Adams, Frederick V. Bauerlein, and H. Kirk Henson, filed a motion to withdraw as counsel for the plaintiffs on December 10, 2012 [Doc. No. 38].  The court denied the motion. While the original counsel for the plaintiffs remained counsel of record in this matter, Chrisley began to be represented by different counsel shortly after the court's order.  Robert Barr and Lee Pruitt filed a notice of appearance on behalf of Chrisley on December 20, 2012 [Doc. No. 41].  Through her new counsel, Chrisley filed a motion to dismiss Childs without prejudice from the initial complaint on January 7, 2013 [Doc. No. 48].  The court granted the motion [Doc. No. 49].

On February 4, 2013, Chrisley filed a first amended complaint alleging federal and state law causes of action [Doc. No. 51].  The first amended complaint did not name Childs as a defendant.  On February 25, 2013, Chrisley filed a second amended complaint alleging federal and state law causes of action [Doc. No. 60].  The second amended complaint did not name Childs as a defendant.

---

[2] There were two plaintiffs named in the initial complaint: Chrisley and Pacific Development Partners, LLC.

On June 25, 2013, Barr, Valle Simms Ashley, and Pruitt filed a motion to withdraw as counsel for Chrisley [Doc. No. 90].  The court held a hearing on July 30, 2013 regarding the motion to withdraw [Doc. No. 90], a previously filed motion for reconsideration of the court's order denying the motion to withdraw by Chrisley's initial counsel [Doc. No. 57], and the motion for sanctions [Doc. No. 34].  Following the hearing, the court ordered Childs to file an amended motion for sanctions to clarify the individuals against whom she sought sanctions [Doc. No. 95].  The court did not rule on the motion to withdraw or motion for reconsideration.  On August 7, 2013, Childs filed an amended motion for sanctions as ordered by the court [Doc. No. 98].

On August 26, 2013, Robert Keegan Federal, Jr., Keith Hasson, and Rene Octavio Lerer filed notices of appearance on behalf of Chrisley [Doc. Nos. 106, 107, 108].  The court granted the motion to withdraw by the Law Offices of Bob Barr and its attorneys on August 27, 2013 [Doc. No. 110].  The court granted the motion for reconsideration by the TLG and its attorneys on August 28, 2013 [Doc. No. 111].  On November 14, 2013, Hasson filed a motion to withdraw as counsel for Chrisley [Doc. No. 121].  The court granted the motion [Doc. No. 123].  On November 19, 2013, Federal and Lerer filed a motion to withdraw as counsel for Chrisley [Doc. No. 122].  The court granted the motion [Doc. No. 125].

### B.   Allegations Contained Within the Initial Complaint Related to the Claims Set Forth Against Childs

Because the sanctions motion is based on the initial complaint, the court will analyze that pleading even though it is no longer the operative complaint.  The initial complaint alleged that Mark Braddock, in concert with other individuals, operated an ongoing racketeering enterprise.  At the time the initial complaint was filed, Childs was legal counsel for Mark Braddock in related state court matters.  She was his legal counsel during all times relevant to the allegations set forth in the initial complaint.  With respect to Childs, the initial complaint alleged that she "either committed or acted in concert with others in committing the acts and omissions alleged in this Complaint within this district or directed at and harming persons within this district."  Compl. ¶ 17 [Doc. No. 1].  The specific allegations related to the claims set forth against Childs are detailed below.

First, Mark Braddock destroyed, hid, and spoliated records and documents belonging to Chrisley Asset Management ("CAM") in an attempt to cover up his criminal activity.  The majority of the stolen company documents were housed unsealed within Childs's office.

Second, Mark Braddock and Childs violated a temporary restraining order issued by the superior court of Fulton County, Georgia by filing an

emergency motion for an order to preserve assets in receivership.  The motion

filed by Mark Braddock and Childs included the following exhibits: (1) a copy

of a wire notification paid to Chrisley from CAM's bank account and (2) a

copy of a cleared check to the escrow account of Scott Sanders, legal counsel

for the receiver appointed by the superior court, from CAM's bank account.

The initial complaint indicated that these exhibits were accessible only

through the private and confidential CAM bank account with Chase Bank.

While Chrisley and CAM "vigorously disputed" the motion filed by Childs on

behalf of Mark Braddock, her client, the superior court issued an order

granting the motion.

Third, Mark Braddock and Childs filed a "meritless and vexatious

contempt motion" in the superior court against Chrisley and the court-

appointed receiver, Lee Nicholson, "in an effort to maliciously prosecute

actions in bad faith so as to discredit the integrity, reputations, and business

interests of these individuals."  Compl. ¶ 61 [Doc. No. 1].  The initial

complaint also alleged that Childs had been labeled a vexatious litigant by

another federal court, and that the contempt motion "ignore[d] the

supersedeas created by the Notice of Appeal of the underlying order, and

[was] a blatant abuse of the court system without probable cause or merit."[3] Compl. ¶ 61 [Doc. No. 1].

Fourth, Childs, in addition to other defendants, intentionally interfered with Chrisley's and CAM's "ongoing business operations, relationships with present and prospective clients, and present and prospective business opportunities by intentionally, knowingly and willfully engaging in the unlawful conduct set forth in this Complaint." Compl. ¶ 93 [Doc. No. 1]. And Childs acted without privilege.

Fifth, Childs, in addition to other defendants, made statements and engaged in a course of conduct that was false and fraudulent. The allegation most relevant to Childs was that the plaintiffs' online accounts were accessed without authorization. The false and fraudulent acts and statements were made for the purpose of inducing the plaintiffs' reliance, and the plaintiffs did in fact justifiably rely and act, or omit to act, upon the false and fraudulent acts and statements.

Sixth, Childs acted in bad faith, willfully and maliciously, and caused the plaintiffs unnecessary trouble and expense, and was therefore liable for

---

[3] The underlying order referenced in the initial complaint was the order by the superior court granting the emergency motion for an order to preserve assets in receivership.

punitive damages pursuant to O.C.G.A. § 51-12-5.1.  The plaintiffs were also

entitled to attorney's fees and costs pursuant to O.C.G.A. § 13-6-11.

## II.   Discussion

The court recognizes that it previously granted Thompson and the

TLG's motion to withdraw as counsel for Chrisley.  The court finds, however,

that it has jurisdiction to rule on the motion for sanctions and impose

sanctions based on *Peer v. Lewis*, 606 F.3d 1306 (11th Cir. 2010) and *In re Itel

Securities Litigation*, 791 F.2d 672 (9th Cir. 1986).

### A.   Legal Standard

According to the Eleventh Circuit Court of Appeals, "'The purpose of

Rule 11 is to deter baseless filings in district court and thus streamline the

administration and procedure of federal courts.'"  *Peer*, 606 F.3d at 1311

(quoting 2 James Wm. Moore et al., *Moore's Federal Practice* § 11.03 (3d ed.

2010)).  Rule 11(b) provides:

> By presenting to the court a pleading, written motion, or other
> paper—whether by signing, filing, submitting, or later advocating
> it—an attorney or unrepresented party certifies that to the best
> of the person's knowledge, information, and belief, formed after
> an inquiry reasonable under the circumstances:
>
> > (1) it is not being presented for any improper
> > purpose, such as to harass, cause unnecessary delay,
> > or needlessly increase the cost of litigation;

>(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
>(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
>(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Rule 11(c)(1) states, "[T]he court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." According to the advisory committee notes to Rule 11, "[e]ven though it is the attorney whose signature violates the rule, it may be appropriate under the circumstances of the case to impose a sanction on the client." Fed. R. Civ. P. 11 advisory committee note of 1983. The court applies an objective standard in assessing compliance with Rule 11. *Doe v. Fulton-Dekalb Hosp. Auth.*, 628 F.3d 1325, 1341 n.35 (11th Cir. 2010).

## B.   Application

The initial complaint set forth the following claims against Childs: (1) Georgia RICO violations, (2) tortious interference with business relations

and prospective business operations,[4] (3) fraud and accounting, and

(4) attorney's fees and costs.  Childs argues that these claims were asserted

against her for an improper purpose and that they are frivolous and without

factual or legal support.

### 1.    Improper Purpose

Childs alleges that the claims asserted against her in the initial

complaint were filed for an improper purpose in violation of Rule 11(b)(1).

More specifically, she alleges that the claims were asserted against her to

---

[4] Childs does not include tortious interference with business relations and
prospective business operations among the claims noted in her amended
motion for sanctions.  The court assumes this was an oversight on the part of
Childs and that she would argue that the tortious interference claim
was frivolous and without factual or legal support.  This oversight is
understandable considering the manner in which the initial complaint was
drafted.  Count II of the initial complaint states that the tortious interference
claim is asserted "[a]gainst Defendants Mark Braddock, Clerie, Key, PPP,
Lindsey and Stagg."  Compl. at 43–44 [Doc. No. 1].  However, the second
paragraph within that section of the initial complaint states,

> Defendants Mark Braddock, Clerie, Key, PPP, <u>Childs</u>,
> Lindsey, and Stagg (the "Tortious Interference Defendants")
> intentionally interfered with Plaintiffs Julie Chrisley's and
> CAM's ("Tort Plaintiffs") ongoing business operations,
> relationships with present and prospective clients, and present
> and prospective business opportunities by intentionally,
> knowingly and willfully engaging in the unlawful conduct set
> forth in this Complaint.

Compl. ¶ 93 [Doc. No. 1] (emphasis added).  While the initial complaint did
not clearly indicate that Childs was included as a defendant to the claim,
allegations of misconduct were made against her.

create a conflict of interest between Childs and her client in the related state

court matters, Mark Braddock, and to forum shop.

Childs first argues that communications she received from Sanders,

counsel for the receiver, prove that she was named as a defendant in this

lawsuit to create a conflict of interest.  On October 12, 2012, after the initial

complaint had been filed, Sanders sent an email to Childs asking her when

she intended to withdraw from the case and allow Mark Braddock to find new

legal counsel.  He noted what he perceived as a gross conflict of interest in

continuing to represent Mark Braddock.  On October 15, 2012, Sanders sent

an email to Todd Stanton, Childs's co-counsel, asking him if he was taking

over representing Mark Braddock because of her compromised position.

While these emails raise suspicion regarding the motive for naming Childs as

a defendant, they are not sufficient evidence to support Rule 11 sanctions.

Moreover, the emails were not sent by any of the people subject to this motion

for Rule 11 sanctions.[5]

Childs next argues that the timing of the proceedings in the superior

court and the filing of the initial complaint demonstrate that she was named

as a defendant in an attempt to forum shop.  Chrisley filed two related

---

[5] The court is not persuaded by Childs's argument that the statements made
by Sanders should be attributed to Chrisley and her counsel.  Mem. of Law in
Supp. of Amend. Mot. for Sanctions at 10 [Doc. No. 99].

lawsuits in state court prior to filing the initial complaint in federal court and naming Childs as a defendant.  Childs alleges that Chrisley chose to file the complaint in federal court only after being unsuccessful in state court, and after repeated rulings against her in state court.  As with her prior argument, while the timing of the complaint raises suspicion regarding the motive for naming Childs as a defendant in this federal action, the timing is not sufficient evidence to support Rule 11 sanctions.

The last argument raised by Childs as to why the federal action was initiated for an improper purpose is that the federal court was not the proper forum to challenge the conduct in matters before the superior court.  Since the initial complaint attempted to set forth federal causes of action, this argument is not persuasive.

Despite some of Childs's arguments raising suspicion regarding the motive for naming her as a defendant in this federal action, she has not provided sufficient evidence to show that she was named as a defendant for an improper purpose.

### 2.   Frivolous and Without Factual or Legal Support

The court next considers whether the claims set forth in the initial complaint against Childs were frivolous and without factual or legal support. To make this determination, the court engages in a two-step inquiry:

"'(1) whether the party's claims are objectively frivolous, and (2) whether the person who signed the pleadings should have been aware that they were frivolous.'" *Peer*, 606 F.3d at 1311. "The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted." Fed. R. Civ. P. 11 advisory committee note of 1983.

### a.  Whether the Claims are Objectively Frivolous

### i.  Georgia RICO

The claim for Georgia RICO violations against Childs is predicated on allegations that she illegally accessed private, secure bank accounts. The factual basis for these allegations were exhibits attached to the emergency motion for an order to preserve assets in receivership filed by Childs on behalf of Mark Braddock, her client, in the superior court. These exhibits included a copy of a wire notification paid to Chrisley [Doc. No. 1-11 at 20] and a copy of a cleared check to the escrow account of Sanders, legal counsel for the receiver [Doc. No. 1-11 at 22].

First, Chrisley alleges that Childs illegally accessed the bank accounts in violation of a temporary restraining order issued by the superior court. She argues that the superior court ordered "that no <u>access</u> to CAM's bank accounts or other financial affairs be allowed by the parties without the

involvement of and approval by the Receiver."  Opp'n to Amend. Mot. for Sanctions at 3 [Doc. No. 104] (emphasis added).  The court has carefully reviewed the certified transcript of the hearing held on August 15, 2012 [Doc. No. 1-10 at 2–23] and the temporary restraining order filed in the superior court on August 16, 2012 [Doc. No. 1-10 at 24–25].  Neither document evidences a blanket restriction on access to the bank accounts.  In fact, neither document contains the word "access."  Instead, the hearing and temporary restraining order set the parameters of the appointment of a receiver for CAM.  While certain restrictions were placed on the parties, the initial complaint did not set forth factual allegations that Childs had violated any of the restrictions.  The copy of a wire notification was a computer generated alert from Chase Bank to Mark Braddock in the form of an email. The initial complaint alleges no facts to show that Childs had violated the superior court's order to obtain the copy of a wire notification.  Similarly, the initial complaint alleges no facts to show that Childs had violated the superior court's order to obtain a copy of the cleared check.  The exhibits do not support the allegation that she had illegally accessed the bank accounts.

Second, Chrisley alleges that Childs unlawfully accessed the bank accounts in violation of state and federal banking laws.  Specifically, the initial complaint stated, "[T]he Emergency Motion in and of itself

conclusively demonstrates that Mark Braddock and Childs continue to unlawfully access CAM's and the Chrisleys' private, secure bank accounts, in violation of state and federal banking laws."  Compl. ¶ 60 [Doc. No. 1].  The initial complaint did not specifically identify the state or federal banking laws that Childs had allegedly violated.  In its opposition, the TLG[6] identifies the following federal statutes that Childs allegedly violated: (1) 18 U.S.C. § 1344; (2) 18 U.S.C. § 1957; and (3) 18 U.S.C. § 1960.[7]  A careful review of the initial complaint shows no factual allegations that Childs had accessed the bank accounts in violation of state and federal banking laws.

Immediately following the allegations that Childs had illegally accessed bank accounts, the initial complaint included allegations that Childs had filed a meritless and vexatious contempt motion in the superior court, and that she had been labeled a vexatious litigant by another federal court. These allegations were incorporated by reference into the section of the initial complaint that set forth a claim for Georgia RICO violations.  As an initial matter, the court notes that these allegations against Childs are without merit.  Childs prevailed on her allegedly meritless and vexatious contempt

---

[6] The court attributes the arguments raised by the TLG in its opposition to the amended motion for sanctions [Doc. No. 104] to Thompson.

[7] The initial complaint does not allege that the defendants, including Childs, violated 18 U.S.C. § 1960 as one of the criminal activities constituting a pattern of racketeering activity.  *See* Compl. ¶ 86 [Doc. No. 1].

motion, and she was not labeled a vexatious litigant by another federal court. However, more importantly, the court does not find any basis for incorporating these allegations as support for the Georgia RICO claim. Neither does the court see how these allegations support any of the claims set forth in the initial complaint.

For the reasons discussed above, the court determines that the Georgia RICO claim was objectively frivolous and unsupported by law.

### ii.     Tortious Interference with Business Relations and Prospective Business Operations

The parties do not address in their filings with the court whether this claim warrants the imposition of Rule 11 sanctions.  However, the court finds that this claim was asserted against Childs and is subject to the motion for sanctions.  *See supra* note 4.  As discussed in the previous section of this order, there was no factual basis for the Georgia RICO claim.  The same allegations were incorporated into the tortious interference claim.  Once again, the factual allegations were insufficient to support this claim with respect to Childs.  The court determines that the tortious interference claim was objectively frivolous and unsupported by law.

### iii.   Fraud and Accounting

The initial complaint included a claim for fraud and accounting against all of the defendants, including Childs.  Consistent with the initial complaint being a shotgun pleading, this claim incorporated all of the preceding paragraphs in support.  The initial complaint does not include any additional factual allegations in support of the fraud and accounting claim.

The claim for fraud and accounting requires factual allegations that Childs made false statements of fact and engaged in an ongoing fraudulent enterprise.  The initial complaint does not include any factual allegations that would support a claim for fraud and accounting against Childs.  Thus, the court determines that the fraud and accounting claim was objectively frivolous and unsupported by law.

### iv.   Attorney's Fees and Costs

The final claim included in the initial complaint against Childs is for attorney's fees and costs.  The claim is based on the conduct alleged in the initial complaint and for acting in bad faith, willfully and maliciously, and having caused the plaintiffs unnecessary trouble and expense.  Once again, this claim incorporated all of the preceding paragraphs and did not include any additional factual allegations.  Similar to the previous claims, the initial complaint does not include any factual allegations that support a claim for

attorney's fees and costs against Childs.  The court determines that the claim for attorney's fees and costs against Childs was objectively frivolous and unsupported by law.

### b.   Whether the Signer Should have Been Aware that the Pleadings Were Frivolous

In addition to whether the claims were objectively frivolous, the court must determine whether the person who signed the pleadings should have been aware that they were frivolous.  According to the Eleventh Circuit Court of Appeals, courts "must inquire whether [the signer] would have been aware that [the claim] was frivolous if [the signer] had conducted a reasonable inquiry.  If an attorney has failed to conduct a reasonable inquiry into the matter, then the court is obligated to impose sanctions even if the attorney had a good faith belief that the claim was sound." *In re Mroz*, 65 F.3d 1567, 1573 (11th Cir. 1995) (citations omitted).  Further, "[t]he reasonableness of the prefiling inquiry may depend on the following factors: the time available to the signer for investigation, whether he had to rely on a client for information as to the underlying facts, and whether the paper was based on a plausible view of the law." *Id.* (citation omitted).  An additional factor is the extent to which factual development for the claims required discovery.  *Id.*

The initial complaint sets forth serious claims against Childs, including most notably a claim for Georgia RICO violations.  However, there was no legal basis for the claims, and the factual support was woefully inadequate.  Despite continued arguments in support of the claims, it is clear to the court, from an objective standard, that Thompson should have been aware that the claims were frivolous if he had conducted a reasonable inquiry.

Furthermore, considering the factors above, the court finds that the prefiling inquiry conducted in this case was not reasonable.  The alleged illegal acts of Childs that formed the predominate basis for the claims against her had occurred seven days prior to the filing of the initial complaint.  There was enough time for Thompson to perform a substantial inquiry into the claims.  In addition, the seven-day time period was a product of his own strategic decision.  The court is not aware of any statute of limitations or other time bar that necessitated the filing of the initial complaint on October 9, 2012.  Considering the severity of the claims alleged against Childs, Thompson should have investigated the claims further prior to filing if he harbored any doubts regarding the legal or factual basis for the claims.  The other factors also cut against the reasonableness of the prefiling inquiry.  Thompson did not need to rely on his client for the underlying facts.  The underlying facts stem from a lawsuit in state court and Childs's actions in

that case on behalf of her client.  Thompson was an attorney in the state court matter.  He was sufficiently familiar with the underlying facts for the claims against Childs.  Neither were the claims set forth against Childs in the initial complaint based on a plausible view of the law.  The alleged acts by Childs clearly did not violate the temporary restraining order or any other order by the superior court.  Thompson's argument that Childs violated state and federal banking laws also lacks plausibility.  Finally, the extent to which factual development required discovery does not support Thompson's argument that his prefiling inquiry was reasonable.

Accordingly, the court finds that Thompson should have been aware that the claims alleged against Childs were frivolous at the time he signed and subsequently filed the initial complaint.  Thompson failed to conduct a reasonable inquiry into the matter, and he should have been aware that the claims were frivolous if he had conducted a reasonable inquiry.

### C.    Sanctions

Childs requests that the court award her attorney's fees and expenses pursuant to Rule 11(c)(4).  Crystal D. Filiberto, counsel for Childs, submitted an affidavit in support of the amended motion for sanctions stating that Childs and her insurance company, Continental Casualty Company, had incurred 177.8 hours of legal services, totaling $27,741 in attorney's fees.

Filiberto also states in the affidavit that the insurance company incurred $50.63 in litigation costs and expenses.  The court finds that these attorney's fees and costs are reasonable.

The court does not have unrestricted discretion to impose sanctions. Rule 11(c)(4) expressly states, "A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated."  The advisory committee notes to Rule 11 state the following:

> The rule does not attempt to enumerate the factors a court should consider in deciding whether to impose a sanction or what sanctions would be appropriate in the circumstances; but, for emphasis, it does specifically note that a sanction may be nonmonetary as well as monetary.  Whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time and expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; what amount is needed to deter similar activity by other litigations: all of these may in a particular case be proper considerations.

Fed. R. Civ. P. 11 advisory committee note of 1993.  The Eleventh Circuit Court of Appeals has noted that "[t]he conduct and resources of the party to be sanctioned are relevant to the determination of the amount of sanctions to

be imposed." *Baker v. Alderman*, 158 F.3d 516, 528 (11th Cir. 1998).  "The district court should also inquire as to the extent to which the nonviolating party's expenses could have been avoided, or mitigated, and reduce or increase the award accordingly."  *Id.*

The court finds that sanctions are appropriate under the circumstances of this case.  And the court imposes sanctions on Thompson and the TLG.[8] While the court may elect to impose sanctions on a party to a lawsuit, even one who did not physically sign the pleading, the ultimate responsibility for the sanctionable conduct in this case rests with Thompson and the TLG.  The court finds that there is not a sufficient basis to impose Rule 11 sanctions against Chrisley.  After consideration of the factors discussed above, the court imposes monetary sanctions in the total amount of $27,791.63.  The court finds that the conduct of Thompson and the TLG was reprehensible.  Serious claims were made against Childs without a proper basis for such claims. With respect to resources, Thompson and the TLG have sufficient resources to cover the sanction imposed.  Further, Childs' expenses could have been avoided entirely if Thompson and the TLG had not engaged in their conduct. Thompson and the TLG are required to reimburse Childs in the full amount

[8] The court does not impose sanctions on Chrisley, Henson, or Adams.

of her attorney's fees and costs.  Thompson and the TLG are jointly and severally liable for the amount specified in this order.

## III.  Conclusion

The amended motion for sanctions [Doc. No. 98] is hereby GRANTED. Robert T. Thompson, Jr. and the Thompson Law Group, LLC are DIRECTED to reimburse Kimberly A. Childs in the amount of $27,791.63 for her attorney's fees and costs.  The court DIRECTS the clerk of the court to enter judgment in the amount of $27,791.63 against Robert T. Thompson, Jr. and the Thompson Law Group, LLC jointly and severally.

**SO ORDERED** this 21st day of January, 2014.


/s/ Charles A. Pannell, Jr.
CHARLES A. PANNELL, JR.
United States District Judge