UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JULIE CHRISLEY, individually and
in her capacity as the majority owner
of CHRISLEY ASSET
MANAGEMENT, LLC,

        Plaintiff,

    v.

MARK BRADDOCK, KEY ASSET
SOLUTIONS, LLC, ALINA CLERIE,
ARC AUTO BROKERS, LLC,

        Defendants.

CIVIL ACTION NO.

1:12-CV-3524-CAP

## O R D E R

This matter is before the court on Mark Braddock's motion to dismiss the second amended complaint [Doc. No. 64], Key Asset Solutions, LLC's ("KAS") motion to dismiss the second amended complaint [Doc. No. 65], Alina K. Clerie's motion to dismiss the second amended complaint [Doc. No. 66], and ARC Auto Brokers, LLC's ("ARC") motion to dismiss the second amended complaint [Doc. No. 67].

## I.   Introduction

### A.   Procedural History

On October 9, 2012, Julie Chrisley filed this action asserting federal and state law causes of action [Doc. No. 1].[1]  A few of the defendants filed three separate motions for a more definite statement [Doc. Nos. 11, 14, 26]. On November 8, 2012, Kimberly A. Childs filed a motion to dismiss the initial complaint pursuant to Rule 12(b)(6) [Doc. No. 18].  Childs then filed a motion for Rule 11 sanctions on December 7, 2012 [Doc. No. 34].

Counsel for the plaintiffs,[2] Robert T. Thompson, Jr., Jefferson L. Adams, Frederick V. Bauerlein, and H. Kirk Henson, filed a motion to withdraw as counsel for the plaintiffs on December 10, 2012 [Doc. No. 38]. On December 13, 2012, the court granted the motions for a more definite statement and ordered the plaintiffs to file an amended complaint [Doc. No. 40].  The court denied the motion to withdraw as counsel for the plaintiffs.

While the original counsel for the plaintiffs remained counsel of record

---

[1] The initial complaint named Mark Braddock, Leslie (Hershberger) Braddock, Alina Clerie, Grace Realty Group, LLC, KAS, Watercolor Retreat, LLC, Childs, James "Stagg" Shelton, ARC, Valencia Walker, and Steven Lindsey as defendants.  The initial complaint included parties omitted from the subsequently filed amended complaints or dismissed pursuant to subsequently filed motions to dismiss.

[2] There were two plaintiffs at the time the court entered its order: Julie Chrisley and Pacific Development Partners, LLC.

in this matter, Julie Chrisley began to be represented by different counsel shortly after the court's order.  Robert Barr and Lee Pruitt filed a notice of appearance on behalf of Julie Chrisley on December 20, 2012 [Doc. No. 41]. Through her new counsel, Julie Chrisley filed a motion to dismiss Childs without prejudice from the initial complaint on January 7, 2013 [Doc. No. 48]. The court granted the motion [Doc. No. 49].  Julie Chrisley filed a motion to dismiss additional defendants without prejudice on February 4, 2013 [Doc. No. 50].  The court granted the motion [Doc. No. 53].

On February 4, 2013, Julie Chrisley filed a first amended complaint alleging federal and state law causes of action [Doc. No. 51].[3]  The first amended complaint did not name Childs as a defendant.  On February 25, 2013, Julie Chrisley filed a second amended complaint alleging federal and state law causes of action [Doc. No. 60].  The second amended complaint did not name Childs as a defendant.  The four named defendants in the second amended complaint filed four separate motions to dismiss on March 6, 2013 [Doc. Nos. 64, 65, 66, 67].  Private Peering Point, LLC ("PPP") filed an answer and counterclaim against Julie Chrisley on April 10, 2013 [Doc. No. 81].

---

[3] The first amended complaint named Mark Braddock, KAS, Alina Clerie, ARC, and Private Peering Point, LLC d/b/a Vocalcloud as defendants.

Julie Chrisley and PPP filed a joint motion to dismiss with prejudice on April 18, 2013 [Doc. No. 82].  The court granted the motion [Doc. No. 84].

On June 25, 2013, Barr, Valle Simms Ashley, and Pruitt filed a motion to withdraw as counsel for Chrisley [Doc. No. 90].  The court held a hearing on July 30, 2013 regarding the motion to withdraw [Doc. No. 90], a previously filed motion for reconsideration of the court's order denying the motion to withdraw by Julie Chrisley's initial counsel [Doc. No. 57], and the motion for sanctions [Doc. No. 34].  Following the hearing, the court ordered Childs to file an amended motion for sanctions to clarify the individuals against whom she sought sanctions [Doc. No. 95].  The court did not rule on the motion to withdraw or motion for reconsideration.  On August 7, 2013, Childs filed an amended motion for sanctions as ordered by the court [Doc. No. 98].

On August 26, 2013, Robert Keegan Federal, Jr., Keith Hasson, and Rene Octavio Lerer filed notices of appearance on behalf of Julie Chrisley [Doc. Nos. 106, 107, 108].  The court granted the motion to withdraw by the Law Offices of Bob Barr and its attorneys on August 27, 2013 [Doc. No. 110]. The court granted the motion for reconsideration by the Thompson Law Group, LLC and its attorneys on August 28, 2013 [Doc. No. 111].  On November 14, 2013, Hasson filed a motion to withdraw as counsel for Julie Chrisley [Doc. No. 121].  The court granted the motion [Doc. No. 123].  On

November 19, 2013, Federal and Lerer filed a motion to withdraw as counsel

for Julie Chrisley [Doc. No. 122].  The court granted the motion [Doc.

No. 125].  On January 21, 2014, the court granted Childs's motion for Rule 11

sanctions [Doc. No. 126].

### B.    Facts as Alleged in the Second Amended Complaint

Julie Chrisley is the majority owner of Chrisley Asset Management,

LLC ("CAM"), a Georgia limited liability company.  CAM operated as an asset

manager of bank-owned foreclosed properties.[4]  The other owners of CAM are

Julie Chrisley's husband, Todd Chrisley, and Mark Braddock.  Mark

Braddock joined CAM as a practice partner and held the title of Vice

President.  He was responsible for the operations of CAM, and he also

serviced the personal finances of the Chrisley family.  KAS is a Georgia

limited liability company.  Mark Braddock is the owner of KAS.  Alina Clerie

held the title of Vice President of Finance for CAM.  She was responsible for

keeping the books and records, as well as paying the bills for the company.

ARC is a Georgia limited liability company with its principal place of

business located in Fulton County, Georgia.  ARC is engaged in the brokerage

---

[4] CAM is in bankruptcy.  CAM is not operating as an asset manager of
bank-owned foreclosed properties at this time.

sale of automobiles.  Alina Clerie and her husband, Roland Clerie, each own fifty percent of the business.

In August 2010, Gina Longo, Chief Operating Officer of CAM, reported to Todd Chrisley that Mark Braddock was mishandling funds.  Longo resigned from her position later that month.  In September 2010, Dawn Marie O'Connor, the new Chief Operating Officer of CAM, informed Todd Chrisley that Mark Braddock had misrepresented the company's status during a meeting with a representative of the Federal National Mortgage Association ("Fannie Mae").  O'Connor resigned in late 2010 or early 2011.  The Chrisleys began an investigation into these allegations following O'Connor's resignation.

From 2005 to 2012, CAM worked with Fannie Mae to manage its foreclosed properties.[5]  CAM used real estate agents, located across the country, to secure the bank-owned foreclosed properties, oversee necessary maintenance or repair, and list and sell each property.  Fannie Mae paid the real estate agents a commission on the sale of each property and reimbursement for expenses incurred in preparing and selling the properties.  Fannie Mae also paid CAM a management fee for each property sold.  Real

---

[5] The second amended complaint alleges that Fannie Mae provided CAM with its largest volume of business.

estate agents were required to mail, fax, or email requests for a commission or reimbursement to CAM.  Upon receipt of a request, Alina Clerie emailed the request to Fannie Mae and noted any amount paid by CAM to the real estate agent.  Fannie Mae would wire funds to CAM's bank as reimbursement for its payment to the real estate agents.  These funds are referred to as 571 reimbursements.

Mark Braddock directed Alina Clerie to enter 571 reimbursement payments from Fannie Mae as paid in CAM's accounting system, to print checks to pay the real estate agents, but to hold the checks and never mail them.  CAM received between $200,000 and $700,000 per month from Fannie Mae in 571 reimbursement payments.  Mark Braddock converted the unpaid money for his personal use and to pay the other conspirators.  Near the end of 2011, CAM was receiving an increasing number of complaints from real estate agents that they were not receiving payment.  Mark Braddock and Alina Clerie made repeated false statements to Julie Chrisley and Todd Chrisley, and prepared fraudulent financial statements, audit reports, and other documents.

In November 2011, CAM responded to a request for proposal from the Federal Home Loan Mortgage Company ("Freddie Mac").  This was done in an attempt to obtain new business.  Mark Braddock and Alina Clerie

prepared the response to the request for proposal.  The response included false representations, including fraudulent financial statements.  Freddie Mac initially indicated that CAM won the contract but later withdrew the award of the contract upon discovering the false representations.

In February 2012, Fannie Mae required CAM to respond to a request for proposal to continue to receive business.  Fannie Mae conducted an audit of CAM on March 22, 2012.  During the course of the audit, Fannie Mae requested to see a random sample of cancelled checks showing payments to real estate agents by CAM.  Mark Braddock or Alina Clerie directed Steve Lindsey, an employee of PPP, to electronically alter the checks requested by Fannie Mae.  Checks that had never been sent to the real estate agents were altered to show that they had been cancelled by the bank.  Alina Clerie and Mark Braddock presented the altered checks to the auditors.  On June 6, 2012, Fannie Mae informed CAM that it had not been selected to receive future business.

On June 8, 2012, Mark Braddock made four separate withdrawals from CAM's bank account with Chase Bank.  The withdrawals were made from

separate branches, and each withdrawal was in the amount of $9,500.[6]  On

June 11, 2012, Mark Braddock or Alina Clerie made two electronic transfers

from CAM's bank account at Chase Bank.  Each transfer was in the amount

of $9,500.  These transactions were made under false pretenses for the

purpose of diverting funds from CAM for Mark Braddock's personal use.

Between 2009 and 2012, Mark Braddock paid Alina Clerie

approximately $95,000 in excess of her salary from funds belonging to CAM.

At least $26,000 was paid to Alina Clerie through wire transfers from CAM to

ARC.  During the same period of time, Mark Braddock received around $1.4

million in unauthorized payments from CAM in excess of funds he was owed.

The majority of the payments were transferred by wire from CAM to KAS.

In early June 2012, after Fannie Mae informed CAM that it had not

been selected to receive future business, Mark Braddock organized a new

company called US Asset Management Partners, LLC to compete with CAM.

He solicited employees of CAM to work for his new company, and he directed

PPP employees to remove computer and telephone equipment from CAM and

install the equipment in his house.  In late June or early July 2012, Mark

Braddock used CAM's conference room to meet with Rebuild US, a hedge

---

[6] The second amended complaint alleges that withdrawals of $10,000 or more trigger a duty of the bank to file a currency transaction report.  *See* 31 U.S.C. § 5311; 31 C.F.R. § 103.

fund that owned foreclosed properties.  Rather than solicit the company as a client for CAM, Mark Braddock offered his own company as an asset manager.

## II.   Discussion

The defendants in this matter have filed four separate motions to dismiss [Doc. Nos. 64, 65, 66, 67].  The defendants move to dismiss the second amended complaint in its entirety based on a lack of standing and failure to state a claim upon which relief may be granted.

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In order to survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face."  *Id.* at 570.  The court is not required to accept as true all legal conclusions set forth in the complaint.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  The Eleventh Circuit Court of Appeals has adopted a two-pronged approach suggested by the Supreme Court: "1) eliminate any allegations in the complaint that are

merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679 (2009)). "Courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id.*

Pursuant to Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The Eleventh Circuit Court of Appeals has held, "[A] plaintiff must allege: '(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the [plaintiff]; and (4) what the defendants gained by the alleged fraud.'" *Am. Dental Ass'n*, 605 F.3d at 1291. These requirements apply to federal RICO claims alleging fraud. *Id.* Therefore, with respect to Julie Chrisley's allegations of fraud,[7] the substantive allegations must comply with Rule 9(b) in addition to the standard set forth in *Twombly* and *Iqbal*. *Id.*

---

[7] Julie Chrisley alleges mail, wire, and bank fraud as predicate acts for her federal RICO claim against the defendants.

A.    **Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.***

Julie Chrisley alleges federal RICO violations by the defendants in the second amended complaint.  The defendants move to dismiss the federal RICO claim based on a lack of standing and failure to state a claim.  The court addresses only the threshold issue of standing.

1.    **Legal Standard**

Standing is governed by 18 U.S.C. § 1964(c), which states, "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue . . . ."  The Eleventh Circuit Court of Appeals has held that the standing provision "include[s] a requirement that the party's injuries be the direct result of the alleged racketeering activity."  *Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Florida, Inc.*, 140 F.3d 898, 906 (11th Cir. 1998).  A plaintiff has standing to assert a federal RICO claim only if the RICO violation proximately caused the injuries to the plaintiff.  *Id.*  Relying on two decisions by the Supreme Court of the United States, the court of appeals held, "[A] party whose injuries result 'merely from the misfortunes visited upon a third person by the defendant's acts' lacks standing to pursue a claim under RICO."  *Id.* (quoting *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 267 (1992)).  "RICO Standing will not arise solely

because one is a shareholder or limited partner in a company that was the target of the alleged RICO violation.  Such an injury is too indirect or 'derivative' to confer RICO standing." *Id.* (citation omitted).

In a subsequent opinion, the court of appeals held, "[S]imply because the plaintiff is a shareholder of a corporation, it does not necessarily follow that he lacks standing to seek RICO damages in his own right." *Maiz v. Virani*, 253 F.3d 641, 655 (11th Cir. 2001).  The proper inquiry is fact-specific to determine whether an individual who is also a corporate shareholder may recover under 18 U.S.C. § 1964 for a violation that affects both him and the corporation.  *Id.*  In *Maiz*, the court of appeals discussed two prior opinions that addressed whether a plaintiff who was a creditor or shareholder of a corporation had standing to sue.  *Id.*  The plaintiff in the first case was a former employee and director of the corporation.  *Id.*  "He alleged that he was fired and fraudulently induced to make unwise personal financial investments by the corporation's other directors." *Id.*  Based on the allegations set forth in the complaint, the district court held that he did not have standing to sue under RICO.  *Id.*  The court of appeals disagreed:

> "The district court is correct that a creditor or stockholder lacks standing when his claim is based solely on acts of racketeering that target the corporation.  *A plaintiff's status as a creditor or stockholder, however, does not preclude standing for RICO violations if the plaintiff has alleged an injury proximately caused*

> *by the defendants' acts of racketeering that target the plaintiff.*  In
> this case, [the plaintiff] has properly set forth claims of injury
> proximately caused by racketeering activity that targeted him.
> We therefore hold that he has standing under RICO."

*Id.* (quoting *Beck v. Prupis*, 162 F.3d 1090, 1096 n.10 (11th Cir. 1998)).  The

second case discussed in *Maiz* was *Bivens*, in which the plaintiff was a

shareholder and creditor of a corporation.  *Id.*  According to the court of

appeals, the alleged conduct affected the plaintiff in a different manner than

it affected the corporation and shareholders.  *Id.*  Therefore, the plaintiff had

standing.  *Id.*  The court of appeals noted that it had observed the following

in its prior opinion: "[N]otwithstanding the general rule that a corporation's

creditor lacks RICO standing, 'it is possible that a pattern of racketeering

could be directed specifically at a corporation's creditors.'"  *Id.* (quoting

*Bivens*, 140 F.3d at 908).  The court of appeals also noted that the two prior

decisions discussed above "are consistent with the broader corporate law

principle that a shareholder need not proceed by way of a derivative action to

redress harm to a corporation where the shareholder 'shows a violation of a

duty owed directly to him.'"  *Id.* (quoting *Schaffer v. Universal Rundle Corp.*,

397 F.2d 893, 896 (5th Cir. 1968)).

## 2.    Application

The second amended complaint names Julie Chrisley as the plaintiff, both individually and in her capacity as the majority owner of CAM.  This is not a derivative lawsuit filed by Julie Chrisley as a shareholder of the company.  As a threshold matter, she must allege sufficient facts within the complaint to satisfy the standing requirement contained within 18 U.S.C. § 1964(c).  To have standing she needs to have suffered injuries proximately caused by the defendants' acts of racketeering that targeted her.  In paragraph thirteen of the second amended complaint, Julie Chrisley alleges, "The pattern of criminal activity engaged in by the Defendants was the proximate cause of injuries to Plaintiff Chrisley's business interests, including the loss of value of her ownership interest in CAM, lost income and profits from CAM, and damage to her business reputation."  Second Am. Compl. ¶ 13 [Doc. No. 60].  Accepting the factual allegations set forth in the second amended complaint as true, the court finds as a matter of law that Julie Chrisley does not have standing to assert the federal RICO claim against the defendants.  Julie Chrisley's alleged injuries were not

proximately caused by the defendants' acts of racketeering that targeted her. The acts of racketeering targeted CAM.[8]

The factual allegations regarding the federal RICO claim are that Mark Braddock, in concert with Alina Clerie, manipulated 571 reimbursement checks and converted funds for their personal use. Mark Braddock and Alina Clerie engaged in a nufmber of criminal acts to facilitate the operation. They even made false statements to Julie Chrisley to conceal their activity. Mark Braddock and Alina Clerie also made false statements to Freddie Mac and Fannie Mae in relation to requests for a proposal to receive business. Finally, Mark Braddock made several withdrawals from CAM's bank account. The withdrawals were made in a manner to avoid reporting requirements on the bank. During the course of this operation, Mark Braddock made unauthorized payments of CAM money to himself and Alina Clerie. Some of the payments were to companies owned by Mark Braddock and Alina Clerie.

While Julie Chrisley was injured as a result of this pattern of racketeering activity, the acts of racketeering were directed at CAM. Mark Braddock and Alina Clerie were acting within their positions at CAM, and

---

[8] The factual allegations may also establish that the defendants' alleged acts of racketeering targeted Fannie Mae, Freddie Mac, and Chase Bank. The court does not decide this issue. Whether the defendants' alleged acts of racketeering also targeted these other institutions does not affect whether Julie Chrisley has standing under 18 U.S.C. § 1964(c).

they sought to take funds belonging to CAM.  In fact, Julie Chrisley states in the second amended complaint, "Defendants violated 18 U.S.C. § 1962(d) by agreeing to facilitate the operation of the enterprise through a pattern of racketeering activity aimed at draining funds from CAM . . . ."  Second Am. Compl. ¶ 12 [Doc. No. 60].  She does not set forth any factual allegations that she was targeted personally.  Her alleged injuries were the result of her position as majority owner of CAM, which was the target of the defendants' racketeering activity.

The second amended complaint states that CAM is a Georgia limited liability company.  Under Georgia law, limited liability companies are governed by O.C.G.A. § 14-11-100 *et seq.*  The code sections governing limited liability companies set forth requirements regarding derivative actions in O.C.G.A. § 14-11-801 through O.C.G.A. § 14-11-807.  Julie Chrisley has not filed this lawsuit as a derivative action in compliance with these code sections.  In her response to the motion to dismiss, Julie Chrisley argues that she was not required to file a derivative action because it is a closely held corporation.  The Court of Appeals of Georgia has held that a plaintiff may file a direct action, even where the complaint does not properly allege standing to assert such an action, where the reasons for requiring a derivative suit do not apply.  *Southwest Health & Wellness, LLC v. Work*, 639

17

S.E.2d 570, 577 (Ga. Ct. App. 2006).  The reasons for the general rule

requiring a derivative suit are the following:

> "(1) to prevent multiple suits by shareholders; (2) to protect
> corporate creditors by ensuring that the recovery goes to the
> corporation; (3) to protect the interest of all the shareholders by
> ensuring that the recovery goes to the corporation, rather than
> allowing recovery by one or a few shareholders to the prejudice of
> others; and (4) to adequately compensate injured shareholders by
> increasing their share values."

*Id.* (quoting *Stoker v. Bellemeade*, LLC, 615 S.E.2d 1, 7 (Ga. Ct. App. 2005)).

None of the policy reasons for the general rule requiring derivative suits may

be present for the limited exception to apply.  *Id.*

Based on the allegations set forth in the second amended complaint,

there is not a proper basis to allow Julie Chrisley to file a direct action.  First,

Julie Chrisley alleges that CAM is in receivership and preparing to file for

bankruptcy.[9]  Once in bankruptcy, any recovery from this lawsuit may be

owed to creditors rather than the shareholders.  The statutory requirement to

file a derivative action protects corporate creditors of CAM.  Julie Chrisley

also alleges that CAM is owned by three people: (1) Julie Chrisley, (2) Todd

---

[9] Julie Chrisley states in her response to the motions to dismiss that CAM
has since entered into bankruptcy.  Pl.'s Consolidated Br. in Opp'n to Mot. to
Dismiss by Def. Mark Braddock and Def. Alina Clerie at 8–9 [Doc. No. 76].

Chrisley,[10] and (3) Mark Braddock.  Allowing Julie Chrisley to file a direct action without joining other shareholders may prejudice the other shareholders and result in multiple lawsuits.  For these reasons, Julie Chrisley may not file a direct action for the federal RICO claim.

Accordingly, the court dismisses Julie Chrisley's federal RICO claim for lack of standing.  Only CAM has standing to assert the claim because the claim is based solely on acts of racketeering that targeted the corporation.  Further, there is no basis to allow Julie Chrisley to file a direct action under the closely held corporation exception to the general rule requiring a derivative action.  The reasons for requiring a derivative action are present in this matter.

## B.    State Law Claims

Because of the federal RICO claim set forth in the second amended complaint, the court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1331.  Julie Chrisley also sets forth state law claims for violations of the Georgia Racketeer Influenced and Corrupt Organizations Act ("Georgia

---

[10] Julie Chrisley refers to her husband as Michael Todd Chrisley in the paragraph of the second amended complaint alleging the ownership interests of the owners of CAM.  Second Am. Compl. ¶ 16 [Doc. No. 60].  Julie Chrisley refers to her husband as Todd Chrisley throughout the rest of the second amended complaint.  Second Am. Compl. ¶¶ 6 and 25 [Doc. No. 60].  The court treats these identifications as referring to the same individual.

RICO") O.C.G.A. § 16-14-1 *et seq.*[11] and breach of fiduciary duty.  In any action over which the court has original jurisdiction, the court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  However, the court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  The federal RICO claim is the only claim over which the court has original jurisdiction.  For the reasons discussed above, the court dismisses the federal RICO claim for lack of standing.  As permitted under 28 U.S.C. § 1367(c)(3), the court declines to exercise supplemental jurisdiction over the state law claims set forth in the second amended complaint.

It is apparent from the second amended complaint that Julie Chrisley relies on supplemental jurisdiction for the court to have jurisdiction over the state law claims.  The court does not have original jurisdiction over the state law claims pursuant to 28 U.S.C. § 1331.  And Julie Chrisley does not allege sufficient facts to support diversity jurisdiction pursuant to 28 U.S.C. § 1332

---

[11] Julie Chrisley cites O.C.G.A. § 16-4-3 in the second amended complaint. The code section cited is not part of the Georgia RICO act.  The court assumes that Julie Chrisley intended to cite O.C.G.A. § 16-14-1 *et seq*.

as an alternative basis for jurisdiction over the state law claims.  Julie

Chrisley states that she "is a resident of the State of Florida and she also

maintains a home in Georgia."  Second Am. Compl. ¶ 5 [Doc. No. 60].  She

also states, "From 2009 through 2012, Plaintiff and her family lived for

extended periods in California or Florida, although they have maintained a

home in Atlanta at all time relevant to this matter."  Second Am. Compl. ¶ 15

[Doc. No. 60].  The law is clear that the burden is on the party invoking the

court's jurisdiction to show facts supporting the existence of federal

jurisdiction.  *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002).

Diversity jurisdiction exists over citizens of different states.  28 U.S.C.

§ 1332(a)(1).  A complaint must allege the party's citizenship, which is

equivalent to domicile.  *McCormick*, 293 F.3d at 1257.  "Citizenship, not

residence, is the key fact that must be alleged in the complaint to establish

diversity for a natural person."  *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th

Cir. 1994).  Julie Chrisley has not clearly identified her citizenship in the

second amended complaint.  She merely identifies a few states in which she

and her family have resided.  It is unclear whether she is a citizen of Florida,

Georgia, or California.  Julie Chrisley has not satisfied her burden to show

facts supporting the existence of diversity jurisdiction.  Therefore, the court

dismisses the state law claims because it declines to exercise supplemental

jurisdiction over the claims, and Julie Chrisley does not allege an alternative basis upon which to exercise jurisdiction.

## III.    Conclusion

The court GRANTS the motions to dismiss filed by Mark Braddock, KAS, Alina Clerie, and ARC [Doc. Nos. 64, 65, 66, 67].  The second amended complaint is hereby DISMISSED.


**SO ORDERED** this 28th day of January, 2014.


/s/ Charles A. Pannell, Jr.
CHARLES A. PANNELL, JR.
United States District Judge