# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| JULIE CHRISLEY, individually and in her capacity as the majority owner of, CHRISLEY ASSET MANAGEMENT, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION FILE NO. 1:12-cv-3524-CAP |
| vs. | ) ) | |
| MARK BRADDOCK, KEY ASSET SOLUTIONS, LLC, ALINA CLERIE, ARC AUTO BROKERS, LLC, | ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

## <u>NOTICE OF APPEAL</u>

Notice is hereby given that Robert T. Thompson, Jr. and Thompson Law Group, LLC, former counsel for Plaintiffs in the above named case, hereby appeal to the United States Court of Appeals for the Eleventh Circuit pursuant to 28 U.S.C. §1291 from the final order and judgment entered in this action on January 28, 2014, and from an Order Granting Motion for Sanctions [Doc 126] against appellants Robert T.Thompson, Jr. and Thompson Law Group, LLC entered in this action on the 22nd day of January, 2014.

Respectfully submitted this 24th day of February, 2014.

/s/Jackson E. Oliver
Jackson Oliver
Georgia Bar No. 273358
joliver@thomlaw.net

**THOMPSON LAW GROUP, LLC**
Mailing Address:
P.O. Box 53484
Atlanta, Georgia 30355
Physical Address:
3390 Peachtree Road, Suite 1300
Atlanta, Georgia 30326
Telephone: (404) 816-0500
Facsimile: (404) 816-6856
*Attorneys for Thompson Law Group, LLC and Robert T. Thompson, Jr.*

## **CERTIFICATION**

I HEREBY CERTIFY: (a) that this document was prepared using the
Microsoft Office Word 2007 word processing program, (b) that the foregoing
pleading has been prepared with 14 point Times New Roman font, which is one of
the fonts and point selections approved by the Court in Local Rule 5.1C., and (c)
that I have this day filed the foregoing document with the Clerk of Court using the
Court's CM/ECF system which will automatically send notice of said filing to the
ECF participants of record in this action.

This 24th day of February, 2014.

> */s/Jackson E. Oliver*
> Jackson E. Oliver
> Georgia Bar No. 273358
> joliver@thomlaw.net
> *Attorney for Thompson Law Group, LLC*
> *and Robert T. Thompson, Jr.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JULIE CHRISLEY, individually and
in her capacity as the majority owner
of CHRISLEY ASSET
MANAGEMENT, LLC,

       Plaintiff,

    v.

MARK BRADDOCK, KEY ASSET
SOLUTIONS, LLC, ALINA CLERIE,
ARC AUTO BROKERS, LLC,

       Defendants.

CIVIL ACTION NO.

1:12-CV-3524-CAP

## O R D E R

This matter is before the court on Kimberly A. Childs's amended

motion for sanctions [Doc. No. 98].  Childs, who is no longer a party to this

action, filed a motion for Federal Rule of Civil Procedure 11 sanctions prior to

her dismissal.  She seeks Rule 11 sanctions against Julie Chrisley, Robert T.

Thompson, Jr., and the Thompson Law Group, LLC (hereinafter "the TLG").[1]

---

[1] Childs initially indicated in the amended motion for sanctions that she
sought sanctions against Chrisley, Thompson, H. Kirk Henson, Jefferson
Adams, and the TLG.  Childs has withdrawn her motion as to Henson and
Adams.  Childs's Reply Mem. of Law in Supp. of Am. Mot. for Sanctions at 11
[Doc. No. 114].

I.      Introduction

Childs is an attorney licensed to practice in Georgia.  She represents

Mark Braddock in several state court matters brought by Chrisley on behalf

of companies in which she claims ownership.  The state court lawsuits are

related to this matter.  The related lawsuits include *Julie Chrisley, Chrisley*

*Asset Management, LLC v. Mark Braddock and Alina Clerie*, Superior Court

of Fulton County, State of Georgia, CAFN: 2012-CV-219963 and *EZ Title*

*Loans, LLC and Pacific Development Partners, LLC v. Grace Realty Group,*

*LLC, Key Asset Solutions, LLC, RES-GA Buckhead, LLC, Mark Braddock,*

*individually, and Valencia Walker, individually*, Superior Court of Fulton

County, State of Georgia, CAFN: 2012-CV-222070.  Chrisley filed the two

related state court lawsuits prior to filing the initial complaint in federal

court.  Thompson and the TLG represented Chrisley in the related state court

lawsuits at the time the initial complaint was filed with this court.  Childs

sought dismissal from the federal lawsuit and sanctions for being named as a

defendant in the federal lawsuit.

A.      Procedural History

On October 9, 2012, Chrisley filed this action asserting federal and

state law causes of action against Childs and other defendants [Doc. No. 1].

On November 8, 2012, Childs filed a motion to dismiss the initial complaint

pursuant to Rule 12(b)(6) [Doc. No. 18].  Childs filed a motion for Rule 11

sanctions on December 7, 2012 [Doc. No. 34].

Counsel for the plaintiffs,[2] Thompson, Jefferson L. Adams, Frederick V.

Bauerlein, and H. Kirk Henson, filed a motion to withdraw as counsel for the

plaintiffs on December 10, 2012 [Doc. No. 38].  The court denied the motion.

While the original counsel for the plaintiffs remained counsel of record in this

matter, Chrisley began to be represented by different counsel shortly after

the court's order.  Robert Barr and Lee Pruitt filed a notice of appearance on

behalf of Chrisley on December 20, 2012 [Doc. No. 41].  Through her new

counsel, Chrisley filed a motion to dismiss Childs without prejudice from the

initial complaint on January 7, 2013 [Doc. No. 48].  The court granted the

motion [Doc. No. 49].

On February 4, 2013, Chrisley filed a first amended complaint alleging

federal and state law causes of action [Doc. No. 51].  The first amended

complaint did not name Childs as a defendant.  On February 25, 2013,

Chrisley filed a second amended complaint alleging federal and state law

causes of action [Doc. No. 60].  The second amended complaint did not name

Childs as a defendant.

---

[2] There were two plaintiffs named in the initial complaint: Chrisley and
Pacific Development Partners, LLC.

3

On June 25, 2013, Barr, Valle Simms Ashley, and Pruitt filed a motion to withdraw as counsel for Chrisley [Doc. No. 90].  The court held a hearing on July 30, 2013 regarding the motion to withdraw [Doc. No. 90], a previously filed motion for reconsideration of the court's order denying the motion to withdraw by Chrisley's initial counsel [Doc. No. 57], and the motion for sanctions [Doc. No. 34].  Following the hearing, the court ordered Childs to file an amended motion for sanctions to clarify the individuals against whom she sought sanctions [Doc. No. 95].  The court did not rule on the motion to withdraw or motion for reconsideration.  On August 7, 2013, Childs filed an amended motion for sanctions as ordered by the court [Doc. No. 98].

On August 26, 2013, Robert Keegan Federal, Jr., Keith Hasson, and Rene Octavio Lerer filed notices of appearance on behalf of Chrisley [Doc. Nos. 106, 107, 108].  The court granted the motion to withdraw by the Law Offices of Bob Barr and its attorneys on August 27, 2013 [Doc. No. 110].  The court granted the motion for reconsideration by the TLG and its attorneys on August 28, 2013 [Doc. No. 111].  On November 14, 2013, Hasson filed a motion to withdraw as counsel for Chrisley [Doc. No. 121].  The court granted the motion [Doc. No. 123].  On November 19, 2013, Federal and Lerer filed a motion to withdraw as counsel for Chrisley [Doc. No. 122].  The court granted the motion [Doc. No. 125].

4

**B.  Allegations Contained Within the Initial Complaint Related to the Claims Set Forth Against Childs**

Because the sanctions motion is based on the initial complaint, the court will analyze that pleading even though it is no longer the operative complaint.  The initial complaint alleged that Mark Braddock, in concert with other individuals, operated an ongoing racketeering enterprise.  At the time the initial complaint was filed, Childs was legal counsel for Mark Braddock in related state court matters.  She was his legal counsel during all times relevant to the allegations set forth in the initial complaint.  With respect to Childs, the initial complaint alleged that she "either committed or acted in concert with others in committing the acts and omissions alleged in this Complaint within this district or directed at and harming persons within this district."  Compl. ¶ 17 [Doc. No. 1].  The specific allegations related to the claims set forth against Childs are detailed below.

First, Mark Braddock destroyed, hid, and spoliated records and documents belonging to Chrisley Asset Management ("CAM") in an attempt to cover up his criminal activity.  The majority of the stolen company documents were housed unsealed within Childs's office.

Second, Mark Braddock and Childs violated a temporary restraining order issued by the superior court of Fulton County, Georgia by filing an

emergency motion for an order to preserve assets in receivership.  The motion

filed by Mark Braddock and Childs included the following exhibits: (1) a copy

of a wire notification paid to Chrisley from CAM's bank account and (2) a

copy of a cleared check to the escrow account of Scott Sanders, legal counsel

for the receiver appointed by the superior court, from CAM's bank account.

The initial complaint indicated that these exhibits were accessible only

through the private and confidential CAM bank account with Chase Bank.

While Chrisley and CAM "vigorously disputed" the motion filed by Childs on

behalf of Mark Braddock, her client, the superior court issued an order

granting the motion.

Third, Mark Braddock and Childs filed a "meritless and vexatious

contempt motion" in the superior court against Chrisley and the court-

appointed receiver, Lee Nicholson, "in an effort to maliciously prosecute

actions in bad faith so as to discredit the integrity, reputations, and business

interests of these individuals."  Compl. ¶ 61 [Doc. No. 1].  The initial

complaint also alleged that Childs had been labeled a vexatious litigant by

another federal court, and that the contempt motion "ignore[d] the

supersedeas created by the Notice of Appeal of the underlying order, and

[was] a blatant abuse of the court system without probable cause or merit."[3] Compl. ¶ 61 [Doc. No. 1].

Fourth, Childs, in addition to other defendants, intentionally interfered with Chrisley's and CAM's "ongoing business operations, relationships with present and prospective clients, and present and prospective business opportunities by intentionally, knowingly and willfully engaging in the unlawful conduct set forth in this Complaint." Compl. ¶ 93 [Doc. No. 1]. And Childs acted without privilege.

Fifth, Childs, in addition to other defendants, made statements and engaged in a course of conduct that was false and fraudulent. The allegation most relevant to Childs was that the plaintiffs' online accounts were accessed without authorization. The false and fraudulent acts and statements were made for the purpose of inducing the plaintiffs' reliance, and the plaintiffs did in fact justifiably rely and act, or omit to act, upon the false and fraudulent acts and statements.

Sixth, Childs acted in bad faith, willfully and maliciously, and caused the plaintiffs unnecessary trouble and expense, and was therefore liable for

---

[3] The underlying order referenced in the initial complaint was the order by the superior court granting the emergency motion for an order to preserve assets in receivership.

punitive damages pursuant to O.C.G.A. § 51-12-5.1.  The plaintiffs were also

entitled to attorney's fees and costs pursuant to O.C.G.A. § 13-6-11.

## II.    Discussion

The court recognizes that it previously granted Thompson and the

TLG's motion to withdraw as counsel for Chrisley.  The court finds, however,

that it has jurisdiction to rule on the motion for sanctions and impose

sanctions based on *Peer v. Lewis*, 606 F.3d 1306 (11th Cir. 2010) and *In re Itel

Securities Litigation*, 791 F.2d 672 (9th Cir. 1986).

### A.    Legal Standard

According to the Eleventh Circuit Court of Appeals, "'The purpose of

Rule 11 is to deter baseless filings in district court and thus streamline the

administration and procedure of federal courts.'"  *Peer*, 606 F.3d at 1311

(quoting 2 James Wm. Moore et al., *Moore's Federal Practice* § 11.03 (3d ed.

2010)).  Rule 11(b) provides:

> By presenting to the court a pleading, written motion, or other
> paper—whether by signing, filing, submitting, or later advocating
> it—an attorney or unrepresented party certifies that to the best
> of the person's knowledge, information, and belief, formed after
> an inquiry reasonable under the circumstances:
>
> > (1) it is not being presented for any improper
> > purpose, such as to harass, cause unnecessary delay,
> > or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions
are warranted by existing law or by a nonfrivolous
argument for extending, modifying, or reversing
existing law or for establishing new law;

(3) the factual contentions have evidentiary support
or, if specifically so identified, will likely have
evidentiary support after a reasonable opportunity
for further investigation or discovery; and

(4) the denials of factual contentions are warranted
on the evidence or, if specifically so identified, are
reasonably based on belief or a lack of information.

Rule 11(c)(1) states, "[T]he court may impose an appropriate sanction on any

attorney, law firm, or party that violated the rule or is responsible for the

violation." According to the advisory committee notes to Rule 11, "[e]ven

though it is the attorney whose signature violates the rule, it may be

appropriate under the circumstances of the case to impose a sanction on the

client." Fed. R. Civ. P. 11 advisory committee note of 1983. The court applies

an objective standard in assessing compliance with Rule 11. *Doe v. Fulton-*

*Dekalb Hosp. Auth.*, 628 F.3d 1325, 1341 n.35 (11th Cir. 2010).

### B.    Application

The initial complaint set forth the following claims against Childs:

(1) Georgia RICO violations, (2) tortious interference with business relations

and prospective business operations,[4] (3) fraud and accounting, and

(4) attorney's fees and costs.  Childs argues that these claims were asserted

against her for an improper purpose and that they are frivolous and without

factual or legal support.

### 1.    Improper Purpose

Childs alleges that the claims asserted against her in the initial

complaint were filed for an improper purpose in violation of Rule 11(b)(1).

More specifically, she alleges that the claims were asserted against her to

---

[4] Childs does not include tortious interference with business relations and
prospective business operations among the claims noted in her amended
motion for sanctions.  The court assumes this was an oversight on the part of
Childs and that she would argue that the tortious interference claim was
frivolous and without factual or legal support.  This oversight is
understandable considering the manner in which the initial complaint was
drafted.  Count II of the initial complaint states that the tortious interference
claim is asserted "[a]gainst Defendants Mark Braddock, Clerie, Key, PPP,
Lindsey and Stagg."  Compl. at 43–44 [Doc. No. 1].  However, the second
paragraph within that section of the initial complaint states,

> Defendants Mark Braddock, Clerie, Key, PPP, <u>Childs</u>,
> Lindsey, and Stagg (the "Tortious Interference Defendants")
> intentionally interfered with Plaintiffs Julie Chrisley's and
> CAM's ("Tort Plaintiffs") ongoing business operations,
> relationships with present and prospective clients, and present
> and prospective business opportunities by intentionally,
> knowingly and willfully engaging in the unlawful conduct set
> forth in this Complaint.

Compl. ¶ 93 [Doc. No. 1] (emphasis added).  While the initial complaint did
not clearly indicate that Childs was included as a defendant to the claim,
allegations of misconduct were made against her.

create a conflict of interest between Childs and her client in the related state court matters, Mark Braddock, and to forum shop.

Childs first argues that communications she received from Sanders, counsel for the receiver, prove that she was named as a defendant in this lawsuit to create a conflict of interest.  On October 12, 2012, after the initial complaint had been filed, Sanders sent an email to Childs asking her when she intended to withdraw from the case and allow Mark Braddock to find new legal counsel.  He noted what he perceived as a gross conflict of interest in continuing to represent Mark Braddock.  On October 15, 2012, Sanders sent an email to Todd Stanton, Childs's co-counsel, asking him if he was taking over representing Mark Braddock because of her compromised position.  While these emails raise suspicion regarding the motive for naming Childs as a defendant, they are not sufficient evidence to support Rule 11 sanctions.  Moreover, the emails were not sent by any of the people subject to this motion for Rule 11 sanctions.[5]

Childs next argues that the timing of the proceedings in the superior court and the filing of the initial complaint demonstrate that she was named as a defendant in an attempt to forum shop.  Chrisley filed two related

---

[5] The court is not persuaded by Childs's argument that the statements made by Sanders should be attributed to Chrisley and her counsel.  Mem. of Law in Supp. of Amend. Mot. for Sanctions at 10 [Doc. No. 99].

lawsuits in state court prior to filing the initial complaint in federal court and naming Childs as a defendant.  Childs alleges that Chrisley chose to file the complaint in federal court only after being unsuccessful in state court, and after repeated rulings against her in state court.  As with her prior argument, while the timing of the complaint raises suspicion regarding the motive for naming Childs as a defendant in this federal action, the timing is not sufficient evidence to support Rule 11 sanctions.

The last argument raised by Childs as to why the federal action was initiated for an improper purpose is that the federal court was not the proper forum to challenge the conduct in matters before the superior court.  Since the initial complaint attempted to set forth federal causes of action, this argument is not persuasive.

Despite some of Childs's arguments raising suspicion regarding the motive for naming her as a defendant in this federal action, she has not provided sufficient evidence to show that she was named as a defendant for an improper purpose.

### 2.    Frivolous and Without Factual or Legal Support

The court next considers whether the claims set forth in the initial complaint against Childs were frivolous and without factual or legal support. To make this determination, the court engages in a two-step inquiry:

"'(1) whether the party's claims are objectively frivolous, and (2) whether the person who signed the pleadings should have been aware that they were frivolous.'" *Peer*, 606 F.3d at 1311.  "The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted."  Fed. R. Civ. P. 11 advisory committee note of 1983.

### a.    Whether the Claims are Objectively Frivolous

### i.    Georgia RICO

The claim for Georgia RICO violations against Childs is predicated on allegations that she illegally accessed private, secure bank accounts.  The factual basis for these allegations were exhibits attached to the emergency motion for an order to preserve assets in receivership filed by Childs on behalf of Mark Braddock, her client, in the superior court.  These exhibits included a copy of a wire notification paid to Chrisley [Doc. No. 1-11 at 20] and a copy of a cleared check to the escrow account of Sanders, legal counsel for the receiver [Doc. No. 1-11 at 22].

First, Chrisley alleges that Childs illegally accessed the bank accounts in violation of a temporary restraining order issued by the superior court. She argues that the superior court ordered "that no <u>access</u> to CAM's bank accounts or other financial affairs be allowed by the parties without the

13

involvement of and approval by the Receiver."  Opp'n to Amend. Mot. for

Sanctions at 3 [Doc. No. 104] (emphasis added).  The court has carefully

reviewed the certified transcript of the hearing held on August 15, 2012 [Doc.

No. 1-10 at 2–23] and the temporary restraining order filed in the superior

court on August 16, 2012 [Doc. No. 1-10 at 24–25].  Neither document

evidences a blanket restriction on access to the bank accounts.  In fact,

neither document contains the word "access."  Instead, the hearing and

temporary restraining order set the parameters of the appointment of a

receiver for CAM.  While certain restrictions were placed on the parties, the

initial complaint did not set forth factual allegations that Childs had violated

any of the restrictions.  The copy of a wire notification was a computer

generated alert from Chase Bank to Mark Braddock in the form of an email.

The initial complaint alleges no facts to show that Childs had violated the

superior court's order to obtain the copy of a wire notification.  Similarly, the

initial complaint alleges no facts to show that Childs had violated the

superior court's order to obtain a copy of the cleared check.  The exhibits do

not support the allegation that she had illegally accessed the bank accounts.

Second, Chrisley alleges that Childs unlawfully accessed the bank

accounts in violation of state and federal banking laws.  Specifically, the

initial complaint stated, "[T]he Emergency Motion in and of itself

conclusively demonstrates that Mark Braddock and Childs continue to

unlawfully access CAM's and the Chrisleys' private, secure bank accounts, in

violation of state and federal banking laws." Compl. ¶ 60 [Doc. No. 1].  The

initial complaint did not specifically identify the state or federal banking laws

that Childs had allegedly violated.  In its opposition, the TLG[6] identifies the

following federal statutes that Childs allegedly violated: (1) 18 U.S.C. § 1344;

(2) 18 U.S.C. § 1957; and (3) 18 U.S.C. § 1960.[7]  A careful review of the initial

complaint shows no factual allegations that Childs had accessed the bank

accounts in violation of state and federal banking laws.

Immediately following the allegations that Childs had illegally accessed

bank accounts, the initial complaint included allegations that Childs had

filed a meritless and vexatious contempt motion in the superior court, and

that she had been labeled a vexatious litigant by another federal court.

These allegations were incorporated by reference into the section of the initial

complaint that set forth a claim for Georgia RICO violations.  As an initial

matter, the court notes that these allegations against Childs are without

merit.  Childs prevailed on her allegedly meritless and vexatious contempt

---

[6] The court attributes the arguments raised by the TLG in its opposition to
the amended motion for sanctions [Doc. No. 104] to Thompson.
[7] The initial complaint does not allege that the defendants, including Childs,
violated 18 U.S.C. § 1960 as one of the criminal activities constituting a
pattern of racketeering activity.  *See* Compl. ¶ 86 [Doc. No. 1].

motion, and she was not labeled a vexatious litigant by another federal court. However, more importantly, the court does not find any basis for incorporating these allegations as support for the Georgia RICO claim. Neither does the court see how these allegations support any of the claims set forth in the initial complaint.

For the reasons discussed above, the court determines that the Georgia RICO claim was objectively frivolous and unsupported by law.

### ii.   Tortious Interference with Business Relations and Prospective Business Operations

The parties do not address in their filings with the court whether this claim warrants the imposition of Rule 11 sanctions.  However, the court finds that this claim was asserted against Childs and is subject to the motion for sanctions.  *See supra* note 4.  As discussed in the previous section of this order, there was no factual basis for the Georgia RICO claim.  The same allegations were incorporated into the tortious interference claim.  Once again, the factual allegations were insufficient to support this claim with respect to Childs.  The court determines that the tortious interference claim was objectively frivolous and unsupported by law.

### iii.   Fraud and Accounting

The initial complaint included a claim for fraud and accounting against all of the defendants, including Childs.  Consistent with the initial complaint being a shotgun pleading, this claim incorporated all of the preceding paragraphs in support.  The initial complaint does not include any additional factual allegations in support of the fraud and accounting claim.

The claim for fraud and accounting requires factual allegations that Childs made false statements of fact and engaged in an ongoing fraudulent enterprise.  The initial complaint does not include any factual allegations that would support a claim for fraud and accounting against Childs.  Thus, the court determines that the fraud and accounting claim was objectively frivolous and unsupported by law.

### iv.   Attorney's Fees and Costs

The final claim included in the initial complaint against Childs is for attorney's fees and costs.  The claim is based on the conduct alleged in the initial complaint and for acting in bad faith, willfully and maliciously, and having caused the plaintiffs unnecessary trouble and expense.  Once again, this claim incorporated all of the preceding paragraphs and did not include any additional factual allegations.  Similar to the previous claims, the initial complaint does not include any factual allegations that support a claim for

attorney's fees and costs against Childs.  The court determines that the claim for attorney's fees and costs against Childs was objectively frivolous and unsupported by law.

### b.      Whether the Signer Should have Been Aware that the Pleadings Were Frivolous

In addition to whether the claims were objectively frivolous, the court must determine whether the person who signed the pleadings should have been aware that they were frivolous.  According to the Eleventh Circuit Court of Appeals, courts "must inquire whether [the signer] would have been aware that [the claim] was frivolous if [the signer] had conducted a reasonable inquiry.  If an attorney has failed to conduct a reasonable inquiry into the matter, then the court is obligated to impose sanctions even if the attorney had a good faith belief that the claim was sound." *In re Mroz*, 65 F.3d 1567, 1573 (11th Cir. 1995) (citations omitted).  Further, "[t]he reasonableness of the prefiling inquiry may depend on the following factors: the time available to the signer for investigation, whether he had to rely on a client for information as to the underlying facts, and whether the paper was based on a plausible view of the law." *Id.* (citation omitted).  An additional factor is the extent to which factual development for the claims required discovery. *Id.*

The initial complaint sets forth serious claims against Childs, including most notably a claim for Georgia RICO violations.  However, there was no legal basis for the claims, and the factual support was woefully inadequate.  Despite continued arguments in support of the claims, it is clear to the court, from an objective standard, that Thompson should have been aware that the claims were frivolous if he had conducted a reasonable inquiry.

Furthermore, considering the factors above, the court finds that the prefiling inquiry conducted in this case was not reasonable.  The alleged illegal acts of Childs that formed the predominate basis for the claims against her had occurred seven days prior to the filing of the initial complaint.  There was enough time for Thompson to perform a substantial inquiry into the claims.  In addition, the seven-day time period was a product of his own strategic decision.  The court is not aware of any statute of limitations or other time bar that necessitated the filing of the initial complaint on October 9, 2012.  Considering the severity of the claims alleged against Childs, Thompson should have investigated the claims further prior to filing if he harbored any doubts regarding the legal or factual basis for the claims.  The other factors also cut against the reasonableness of the prefiling inquiry.  Thompson did not need to rely on his client for the underlying facts.  The underlying facts stem from a lawsuit in state court and Childs's actions in

that case on behalf of her client.  Thompson was an attorney in the state
court matter.  He was sufficiently familiar with the underlying facts for the
claims against Childs.  Neither were the claims set forth against Childs in
the initial complaint based on a plausible view of the law.  The alleged acts
by Childs clearly did not violate the temporary restraining order or any other
order by the superior court.  Thompson's argument that Childs violated state
and federal banking laws also lacks plausibility.  Finally, the extent to which
factual development required discovery does not support Thompson's
argument that his prefiling inquiry was reasonable.

Accordingly, the court finds that Thompson should have been aware
that the claims alleged against Childs were frivolous at the time he signed
and subsequently filed the initial complaint.  Thompson failed to conduct a
reasonable inquiry into the matter, and he should have been aware that the
claims were frivolous if he had conducted a reasonable inquiry.

## C.    Sanctions

Childs requests that the court award her attorney's fees and expenses
pursuant to Rule 11(c)(4).  Crystal D. Filiberto, counsel for Childs, submitted
an affidavit in support of the amended motion for sanctions stating that
Childs and her insurance company, Continental Casualty Company, had
incurred 177.8 hours of legal services, totaling $27,741 in attorney's fees.

Filiberto also states in the affidavit that the insurance company incurred $50.63 in litigation costs and expenses.  The court finds that these attorney's fees and costs are reasonable.

The court does not have unrestricted discretion to impose sanctions. Rule 11(c)(4) expressly states, "A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated."  The advisory committee notes to Rule 11 state the following:

> The rule does not attempt to enumerate the factors a court should consider in deciding whether to impose a sanction or what sanctions would be appropriate in the circumstances; but, for emphasis, it does specifically note that a sanction may be nonmonetary as well as monetary.  Whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time and expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; what amount is needed to deter similar activity by other litigations: all of these may in a particular case be proper considerations.

Fed. R. Civ. P. 11 advisory committee note of 1993.  The Eleventh Circuit Court of Appeals has noted that "[t]he conduct and resources of the party to be sanctioned are relevant to the determination of the amount of sanctions to

be imposed." *Baker v. Alderman*, 158 F.3d 516, 528 (11th Cir. 1998). "The district court should also inquire as to the extent to which the nonviolating party's expenses could have been avoided, or mitigated, and reduce or increase the award accordingly." *Id.*

The court finds that sanctions are appropriate under the circumstances of this case. And the court imposes sanctions on Thompson and the TLG.[8] While the court may elect to impose sanctions on a party to a lawsuit, even one who did not physically sign the pleading, the ultimate responsibility for the sanctionable conduct in this case rests with Thompson and the TLG. The court finds that there is not a sufficient basis to impose Rule 11 sanctions against Chrisley. After consideration of the factors discussed above, the court imposes monetary sanctions in the total amount of $27,791.63. The court finds that the conduct of Thompson and the TLG was reprehensible. Serious claims were made against Childs without a proper basis for such claims. With respect to resources, Thompson and the TLG have sufficient resources to cover the sanction imposed. Further, Childs' expenses could have been avoided entirely if Thompson and the TLG had not engaged in their conduct. Thompson and the TLG are required to reimburse Childs in the full amount

---

[8] The court does not impose sanctions on Chrisley, Henson, or Adams.

of her attorney's fees and costs.  Thompson and the TLG are jointly and severally liable for the amount specified in this order.

## III.   Conclusion

The amended motion for sanctions [Doc. No. 98] is hereby GRANTED. Robert T. Thompson, Jr. and the Thompson Law Group, LLC are DIRECTED to reimburse Kimberly A. Childs in the amount of $27,791.63 for her attorney's fees and costs.  The court DIRECTS the clerk of the court to enter judgment in the amount of $27,791.63 against Robert T. Thompson, Jr. and the Thompson Law Group, LLC jointly and severally.

**SO ORDERED** this 21st day of January, 2014.


/s/ Charles A. Pannell, Jr.
CHARLES A. PANNELL, JR.
United States District Judge

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

JULIE CHRISLEY, individually and in her
capacity as the majority owner of,
CHRISLEY ASSET MANAGEMENT, LLC,

Plaintiff,

vs.

MARK BRADDOCK, KEY ASSET
SOLUTIONS, LLC, ALINA CLERIE, ARC
AUTO BROKERS, LLC,

Defendants.

CIVIL ACTION FILE

NO. 1:12-cv-3524-CAP

**J U D G M E N T**

This action having come before the court, Honorable Charles A. Pannell, Jr., United

States District Judge, for consideration of Kimberly A. Childs' Amended Motion for Sanctions,

and the court having granted said motion, it is

**Ordered and Adjudged** that Robert T. Thompson, Jr. and the Thompson Law Group,

LLC reimburse Kimberly A. Childs in the amount of $27,791.63 for her attorney's fees and costs,

jointly and severally.

Dated at Atlanta, Georgia, this 21st day of January, 2014.

JAMES N. HATTEN
CLERK OF COURT

By:   s/Andrea Gee_____
Deputy Clerk

Prepared, Filed, and Entered
in the Clerk's Office
  January 22, 2014
James N. Hatten
Clerk of Court

By: s/Andrea Gee_____
        Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JULIE CHRISLEY, individually and
in her capacity as the majority owner
of CHRISLEY ASSET
MANAGEMENT, LLC,

       Plaintiff,

    v.

MARK BRADDOCK, KEY ASSET
SOLUTIONS, LLC, ALINA CLERIE,
ARC AUTO BROKERS, LLC,

       Defendants.

CIVIL ACTION NO.

1:12-CV-3524-CAP

## O R D E R

This matter is before the court on Mark Braddock's motion to dismiss
the second amended complaint [Doc. No. 64], Key Asset Solutions, LLC's
("KAS") motion to dismiss the second amended complaint [Doc. No. 65], Alina
K. Clerie's motion to dismiss the second amended complaint [Doc. No. 66],
and ARC Auto Brokers, LLC's ("ARC") motion to dismiss the second amended
complaint [Doc. No. 67].

## I.   Introduction

### A.   Procedural History

On October 9, 2012, Julie Chrisley filed this action asserting federal and state law causes of action [Doc. No. 1].[1]  A few of the defendants filed three separate motions for a more definite statement [Doc. Nos. 11, 14, 26]. On November 8, 2012, Kimberly A. Childs filed a motion to dismiss the initial complaint pursuant to Rule 12(b)(6) [Doc. No. 18].  Childs then filed a motion for Rule 11 sanctions on December 7, 2012 [Doc. No. 34].

Counsel for the plaintiffs,[2] Robert T. Thompson, Jr., Jefferson L. Adams, Frederick V. Bauerlein, and H. Kirk Henson, filed a motion to withdraw as counsel for the plaintiffs on December 10, 2012 [Doc. No. 38]. On December 13, 2012, the court granted the motions for a more definite statement and ordered the plaintiffs to file an amended complaint [Doc. No. 40].  The court denied the motion to withdraw as counsel for the plaintiffs.

While the original counsel for the plaintiffs remained counsel of record

---

[1] The initial complaint named Mark Braddock, Leslie (Hershberger) Braddock, Alina Clerie, Grace Realty Group, LLC, KAS, Watercolor Retreat, LLC, Childs, James "Stagg" Shelton, ARC, Valencia Walker, and Steven Lindsey as defendants.  The initial complaint included parties omitted from the subsequently filed amended complaints or dismissed pursuant to subsequently filed motions to dismiss.
[2] There were two plaintiffs at the time the court entered its order: Julie Chrisley and Pacific Development Partners, LLC.

in this matter, Julie Chrisley began to be represented by different counsel shortly after the court's order. Robert Barr and Lee Pruitt filed a notice of appearance on behalf of Julie Chrisley on December 20, 2012 [Doc. No. 41]. Through her new counsel, Julie Chrisley filed a motion to dismiss Childs without prejudice from the initial complaint on January 7, 2013 [Doc. No. 48]. The court granted the motion [Doc. No. 49]. Julie Chrisley filed a motion to dismiss additional defendants without prejudice on February 4, 2013 [Doc. No. 50]. The court granted the motion [Doc. No. 53].

On February 4, 2013, Julie Chrisley filed a first amended complaint alleging federal and state law causes of action [Doc. No. 51].[3] The first amended complaint did not name Childs as a defendant. On February 25, 2013, Julie Chrisley filed a second amended complaint alleging federal and state law causes of action [Doc. No. 60]. The second amended complaint did not name Childs as a defendant. The four named defendants in the second amended complaint filed four separate motions to dismiss on March 6, 2013 [Doc. Nos. 64, 65, 66, 67]. Private Peering Point, LLC ("PPP") filed an answer and counterclaim against Julie Chrisley on April 10, 2013 [Doc. No. 81].

---

[3] The first amended complaint named Mark Braddock, KAS, Alina Clerie, ARC, and Private Peering Point, LLC d/b/a Vocalcloud as defendants.

Julie Chrisley and PPP filed a joint motion to dismiss with prejudice on April 18, 2013 [Doc. No. 82]. The court granted the motion [Doc. No. 84].

On June 25, 2013, Barr, Valle Simms Ashley, and Pruitt filed a motion to withdraw as counsel for Chrisley [Doc. No. 90]. The court held a hearing on July 30, 2013 regarding the motion to withdraw [Doc. No. 90], a previously filed motion for reconsideration of the court's order denying the motion to withdraw by Julie Chrisley's initial counsel [Doc. No. 57], and the motion for sanctions [Doc. No. 34]. Following the hearing, the court ordered Childs to file an amended motion for sanctions to clarify the individuals against whom she sought sanctions [Doc. No. 95]. The court did not rule on the motion to withdraw or motion for reconsideration. On August 7, 2013, Childs filed an amended motion for sanctions as ordered by the court [Doc. No. 98].

On August 26, 2013, Robert Keegan Federal, Jr., Keith Hasson, and Rene Octavio Lerer filed notices of appearance on behalf of Julie Chrisley [Doc. Nos. 106, 107, 108]. The court granted the motion to withdraw by the Law Offices of Bob Barr and its attorneys on August 27, 2013 [Doc. No. 110]. The court granted the motion for reconsideration by the Thompson Law Group, LLC and its attorneys on August 28, 2013 [Doc. No. 111]. On November 14, 2013, Hasson filed a motion to withdraw as counsel for Julie Chrisley [Doc. No. 121]. The court granted the motion [Doc. No. 123]. On

4

November 19, 2013, Federal and Lerer filed a motion to withdraw as counsel

for Julie Chrisley [Doc. No. 122].  The court granted the motion [Doc.

No. 125].  On January 21, 2014, the court granted Childs's motion for Rule 11

sanctions [Doc. No. 126].

### B.    Facts as Alleged in the Second Amended Complaint

Julie Chrisley is the majority owner of Chrisley Asset Management,

LLC ("CAM"), a Georgia limited liability company.  CAM operated as an asset

manager of bank-owned foreclosed properties.[4]  The other owners of CAM are

Julie Chrisley's husband, Todd Chrisley, and Mark Braddock.  Mark

Braddock joined CAM as a practice partner and held the title of Vice

President.  He was responsible for the operations of CAM, and he also

serviced the personal finances of the Chrisley family.  KAS is a Georgia

limited liability company.  Mark Braddock is the owner of KAS.  Alina Clerie

held the title of Vice President of Finance for CAM.  She was responsible for

keeping the books and records, as well as paying the bills for the company.

ARC is a Georgia limited liability company with its principal place of

business located in Fulton County, Georgia.  ARC is engaged in the brokerage

---

[4] CAM is in bankruptcy.  CAM is not operating as an asset manager of
bank-owned foreclosed properties at this time.

sale of automobiles.  Alina Clerie and her husband, Roland Clerie, each own fifty percent of the business.

In August 2010, Gina Longo, Chief Operating Officer of CAM, reported to Todd Chrisley that Mark Braddock was mishandling funds.  Longo resigned from her position later that month.  In September 2010, Dawn Marie O'Connor, the new Chief Operating Officer of CAM, informed Todd Chrisley that Mark Braddock had misrepresented the company's status during a meeting with a representative of the Federal National Mortgage Association ("Fannie Mae").  O'Connor resigned in late 2010 or early 2011. The Chrisleys began an investigation into these allegations following O'Connor's resignation.

From 2005 to 2012, CAM worked with Fannie Mae to manage its foreclosed properties.[5]  CAM used real estate agents, located across the country, to secure the bank-owned foreclosed properties, oversee necessary maintenance or repair, and list and sell each property.  Fannie Mae paid the real estate agents a commission on the sale of each property and reimbursement for expenses incurred in preparing and selling the properties. Fannie Mae also paid CAM a management fee for each property sold.  Real

---

[5] The second amended complaint alleges that Fannie Mae provided CAM with its largest volume of business.

estate agents were required to mail, fax, or email requests for a commission

or reimbursement to CAM.  Upon receipt of a request, Alina Clerie emailed

the request to Fannie Mae and noted any amount paid by CAM to the real

estate agent.  Fannie Mae would wire funds to CAM's bank as

reimbursement for its payment to the real estate agents.  These funds are

referred to as 571 reimbursements.

Mark Braddock directed Alina Clerie to enter 571 reimbursement

payments from Fannie Mae as paid in CAM's accounting system, to print

checks to pay the real estate agents, but to hold the checks and never mail

them.  CAM received between $200,000 and $700,000 per month from Fannie

Mae in 571 reimbursement payments.  Mark Braddock converted the unpaid

money for his personal use and to pay the other conspirators.  Near the end of

2011, CAM was receiving an increasing number of complaints from real

estate agents that they were not receiving payment.  Mark Braddock and

Alina Clerie made repeated false statements to Julie Chrisley and Todd

Chrisley, and prepared fraudulent financial statements, audit reports, and

other documents.

In November 2011, CAM responded to a request for proposal from the

Federal Home Loan Mortgage Company ("Freddie Mac").  This was done in

an attempt to obtain new business.  Mark Braddock and Alina Clerie

prepared the response to the request for proposal.  The response included

false representations, including fraudulent financial statements.  Freddie

Mac initially indicated that CAM won the contract but later withdrew the

award of the contract upon discovering the false representations.

In February 2012, Fannie Mae required CAM to respond to a request

for proposal to continue to receive business.  Fannie Mae conducted an audit

of CAM on March 22, 2012.  During the course of the audit, Fannie Mae

requested to see a random sample of cancelled checks showing payments to

real estate agents by CAM.  Mark Braddock or Alina Clerie directed Steve

Lindsey, an employee of PPP, to electronically alter the checks requested by

Fannie Mae.  Checks that had never been sent to the real estate agents were

altered to show that they had been cancelled by the bank.  Alina Clerie and

Mark Braddock presented the altered checks to the auditors.  On June 6,

2012, Fannie Mae informed CAM that it had not been selected to receive

future business.

On June 8, 2012, Mark Braddock made four separate withdrawals from

CAM's bank account with Chase Bank.  The withdrawals were made from

separate branches, and each withdrawal was in the amount of $9,500.[6]  On

June 11, 2012, Mark Braddock or Alina Clerie made two electronic transfers

from CAM's bank account at Chase Bank.  Each transfer was in the amount

of $9,500.  These transactions were made under false pretenses for the

purpose of diverting funds from CAM for Mark Braddock's personal use.

Between 2009 and 2012, Mark Braddock paid Alina Clerie

approximately $95,000 in excess of her salary from funds belonging to CAM.

At least $26,000 was paid to Alina Clerie through wire transfers from CAM to

ARC.  During the same period of time, Mark Braddock received around $1.4

million in unauthorized payments from CAM in excess of funds he was owed.

The majority of the payments were transferred by wire from CAM to KAS.

In early June 2012, after Fannie Mae informed CAM that it had not

been selected to receive future business, Mark Braddock organized a new

company called US Asset Management Partners, LLC to compete with CAM.

He solicited employees of CAM to work for his new company, and he directed

PPP employees to remove computer and telephone equipment from CAM and

install the equipment in his house.  In late June or early July 2012, Mark

Braddock used CAM's conference room to meet with Rebuild US, a hedge

---

[6] The second amended complaint alleges that withdrawals of $10,000 or more
trigger a duty of the bank to file a currency transaction report.  *See* 31 U.S.C.
§ 5311; 31 C.F.R. § 103.

fund that owned foreclosed properties.  Rather than solicit the company as a

client for CAM, Mark Braddock offered his own company as an asset

manager.

## II.   Discussion

The defendants in this matter have filed four separate motions to

dismiss [Doc. Nos. 64, 65, 66, 67].  The defendants move to dismiss the second

amended complaint in its entirety based on a lack of standing and failure to

state a claim upon which relief may be granted.

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain

"a short and plain statement of the claim showing that the pleader is entitled

to relief."  "Factual allegations must be enough to raise a right to relief above

the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

(2007).  In order to survive a motion to dismiss, the complaint must contain

sufficient factual matter, accepted as true, "to state a claim to relief that is

plausible on its face." *Id.* at 570.  The court is not required to accept as true

all legal conclusions set forth in the complaint. *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009).  "Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Id.*  The Eleventh

Circuit Court of Appeals has adopted a two-pronged approach suggested by

the Supreme Court: "1) eliminate any allegations in the complaint that are

merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679 (2009)). "Courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id*.

Pursuant to Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The Eleventh Circuit Court of Appeals has held, "[A] plaintiff must allege: '(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the [plaintiff]; and (4) what the defendants gained by the alleged fraud.'" *Am. Dental Ass'n*, 605 F.3d at 1291. These requirements apply to federal RICO claims alleging fraud. *Id*. Therefore, with respect to Julie Chrisley's allegations of fraud,[7] the substantive allegations must comply with Rule 9(b) in addition to the standard set forth in *Twombly* and *Iqbal*. *Id*.

---

[7] Julie Chrisley alleges mail, wire, and bank fraud as predicate acts for her federal RICO claim against the defendants.

11

A.   **Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq*.**

Julie Chrisley alleges federal RICO violations by the defendants in the second amended complaint.  The defendants move to dismiss the federal RICO claim based on a lack of standing and failure to state a claim.  The court addresses only the threshold issue of standing.

1.   **Legal Standard**

Standing is governed by 18 U.S.C. § 1964(c), which states, "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue . . . ."  The Eleventh Circuit Court of Appeals has held that the standing provision "include[s] a requirement that the party's injuries be the direct result of the alleged racketeering activity."  *Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Florida, Inc.*, 140 F.3d 898, 906 (11th Cir. 1998).  A plaintiff has standing to assert a federal RICO claim only if the RICO violation proximately caused the injuries to the plaintiff.  *Id.*  Relying on two decisions by the Supreme Court of the United States, the court of appeals held, "[A] party whose injuries result 'merely from the misfortunes visited upon a third person by the defendant's acts' lacks standing to pursue a claim under RICO."  *Id.* (quoting *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 267 (1992)).  "RICO Standing will not arise solely

12

because one is a shareholder or limited partner in a company that was the target of the alleged RICO violation.  Such an injury is too indirect or 'derivative' to confer RICO standing." *Id.* (citation omitted).

In a subsequent opinion, the court of appeals held, "[S]imply because the plaintiff is a shareholder of a corporation, it does not necessarily follow that he lacks standing to seek RICO damages in his own right." *Maiz v. Virani*, 253 F.3d 641, 655 (11th Cir. 2001).  The proper inquiry is fact-specific to determine whether an individual who is also a corporate shareholder may recover under 18 U.S.C. § 1964 for a violation that affects both him and the corporation.  *Id.*  In *Maiz*, the court of appeals discussed two prior opinions that addressed whether a plaintiff who was a creditor or shareholder of a corporation had standing to sue.  *Id.*  The plaintiff in the first case was a former employee and director of the corporation.  *Id.*  "He alleged that he was fired and fraudulently induced to make unwise personal financial investments by the corporation's other directors." *Id.*  Based on the allegations set forth in the complaint, the district court held that he did not have standing to sue under RICO.  *Id.*  The court of appeals disagreed:

> "The district court is correct that a creditor or stockholder lacks standing when his claim is based solely on acts of racketeering that target the corporation.  *A plaintiff's status as a creditor or stockholder, however, does not preclude standing for RICO violations if the plaintiff has alleged an injury proximately caused*

13

> *by the defendants' acts of racketeering that target the plaintiff.*  In
> this case, [the plaintiff] has properly set forth claims of injury
> proximately caused by racketeering activity that targeted him.
> We therefore hold that he has standing under RICO."

*Id.* (quoting *Beck v. Prupis*, 162 F.3d 1090, 1096 n.10 (11th Cir. 1998)).  The

second case discussed in *Maiz* was *Bivens*, in which the plaintiff was a

shareholder and creditor of a corporation.  *Id.*  According to the court of

appeals, the alleged conduct affected the plaintiff in a different manner than

it affected the corporation and shareholders.  *Id.*  Therefore, the plaintiff had

standing.  *Id.*  The court of appeals noted that it had observed the following

in its prior opinion: "[N]otwithstanding the general rule that a corporation's

creditor lacks RICO standing, 'it is possible that a pattern of racketeering

could be directed specifically at a corporation's creditors.'"  *Id.* (quoting

*Bivens*, 140 F.3d at 908).  The court of appeals also noted that the two prior

decisions discussed above "are consistent with the broader corporate law

principle that a shareholder need not proceed by way of a derivative action to

redress harm to a corporation where the shareholder 'shows a violation of a

duty owed directly to him.'"  *Id.* (quoting *Schaffer v. Universal Rundle Corp.*,

397 F.2d 893, 896 (5th Cir. 1968)).

### 2.   Application

The second amended complaint names Julie Chrisley as the plaintiff, both individually and in her capacity as the majority owner of CAM.  This is not a derivative lawsuit filed by Julie Chrisley as a shareholder of the company.  As a threshold matter, she must allege sufficient facts within the complaint to satisfy the standing requirement contained within 18 U.S.C. § 1964(c).  To have standing she needs to have suffered injuries proximately caused by the defendants' acts of racketeering that targeted her.  In paragraph thirteen of the second amended complaint, Julie Chrisley alleges, "The pattern of criminal activity engaged in by the Defendants was the proximate cause of injuries to Plaintiff Chrisley's business interests, including the loss of value of her ownership interest in CAM, lost income and profits from CAM, and damage to her business reputation."  Second Am. Compl. ¶ 13 [Doc. No. 60].  Accepting the factual allegations set forth in the second amended complaint as true, the court finds as a matter of law that Julie Chrisley does not have standing to assert the federal RICO claim against the defendants.  Julie Chrisley's alleged injuries were not

proximately caused by the defendants' acts of racketeering that targeted her.

The acts of racketeering targeted CAM.[8]

The factual allegations regarding the federal RICO claim are that Mark

Braddock, in concert with Alina Clerie, manipulated 571 reimbursement

checks and converted funds for their personal use.  Mark Braddock and Alina

Clerie engaged in a nufmber of criminal acts to facilitate the operation.  They

even made false statements to Julie Chrisley to conceal their activity.  Mark

Braddock and Alina Clerie also made false statements to Freddie Mac and

Fannie Mae in relation to requests for a proposal to receive business.  Finally,

Mark Braddock made several withdrawals from CAM's bank account.  The

withdrawals were made in a manner to avoid reporting requirements on the

bank.  During the course of this operation, Mark Braddock made

unauthorized payments of CAM money to himself and Alina Clerie.  Some of

the payments were to companies owned by Mark Braddock and Alina Clerie.

While Julie Chrisley was injured as a result of this pattern of

racketeering activity, the acts of racketeering were directed at CAM.  Mark

Braddock and Alina Clerie were acting within their positions at CAM, and

---

[8] The factual allegations may also establish that the defendants' alleged acts of racketeering targeted Fannie Mae, Freddie Mac, and Chase Bank.  The court does not decide this issue.  Whether the defendants' alleged acts of racketeering also targeted these other institutions does not affect whether Julie Chrisley has standing under 18 U.S.C. § 1964(c).

they sought to take funds belonging to CAM.  In fact, Julie Chrisley states in

the second amended complaint, "Defendants violated 18 U.S.C. § 1962(d) by

agreeing to facilitate the operation of the enterprise through a pattern of

racketeering activity aimed at draining funds from CAM . . . ."  Second Am.

Compl. ¶ 12 [Doc. No. 60].  She does not set forth any factual allegations that

she was targeted personally.  Her alleged injuries were the result of her

position as majority owner of CAM, which was the target of the defendants'

racketeering activity.

The second amended complaint states that CAM is a Georgia limited

liability company.  Under Georgia law, limited liability companies are

governed by O.C.G.A. § 14-11-100 *et seq.*  The code sections governing limited

liability companies set forth requirements regarding derivative actions in

O.C.G.A. § 14-11-801 through O.C.G.A. § 14-11-807.  Julie Chrisley has not

filed this lawsuit as a derivative action in compliance with these code

sections.  In her response to the motion to dismiss, Julie Chrisley argues that

she was not required to file a derivative action because it is a closely held

corporation.  The Court of Appeals of Georgia has held that a plaintiff may

file a direct action, even where the complaint does not properly allege

standing to assert such an action, where the reasons for requiring a

derivative suit do not apply.  *Southwest Health & Wellness, LLC v. Work*, 639

S.E.2d 570, 577 (Ga. Ct. App. 2006).  The reasons for the general rule

requiring a derivative suit are the following:

> "(1) to prevent multiple suits by shareholders; (2) to protect
> corporate creditors by ensuring that the recovery goes to the
> corporation; (3) to protect the interest of all the shareholders by
> ensuring that the recovery goes to the corporation, rather than
> allowing recovery by one or a few shareholders to the prejudice of
> others; and (4) to adequately compensate injured shareholders by
> increasing their share values."

*Id.* (quoting *Stoker v. Bellemeade*, LLC, 615 S.E.2d 1, 7 (Ga. Ct. App. 2005)).

None of the policy reasons for the general rule requiring derivative suits may

be present for the limited exception to apply.  *Id.*

Based on the allegations set forth in the second amended complaint,

there is not a proper basis to allow Julie Chrisley to file a direct action.  First,

Julie Chrisley alleges that CAM is in receivership and preparing to file for

bankruptcy.[9]  Once in bankruptcy, any recovery from this lawsuit may be

owed to creditors rather than the shareholders.  The statutory requirement to

file a derivative action protects corporate creditors of CAM.  Julie Chrisley

also alleges that CAM is owned by three people: (1) Julie Chrisley, (2) Todd

---

[9] Julie Chrisley states in her response to the motions to dismiss that CAM
has since entered into bankruptcy.  Pl.'s Consolidated Br. in Opp'n to Mot. to
Dismiss by Def. Mark Braddock and Def. Alina Clerie at 8–9 [Doc. No. 76].

Chrisley,[10] and (3) Mark Braddock.  Allowing Julie Chrisley to file a direct action without joining other shareholders may prejudice the other shareholders and result in multiple lawsuits.  For these reasons, Julie Chrisley may not file a direct action for the federal RICO claim.

Accordingly, the court dismisses Julie Chrisley's federal RICO claim for lack of standing.  Only CAM has standing to assert the claim because the claim is based solely on acts of racketeering that targeted the corporation.  Further, there is no basis to allow Julie Chrisley to file a direct action under the closely held corporation exception to the general rule requiring a derivative action.  The reasons for requiring a derivative action are present in this matter.

## B.   State Law Claims

Because of the federal RICO claim set forth in the second amended complaint, the court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1331.  Julie Chrisley also sets forth state law claims for violations of the Georgia Racketeer Influenced and Corrupt Organizations Act ("Georgia

---

[10] Julie Chrisley refers to her husband as Michael Todd Chrisley in the paragraph of the second amended complaint alleging the ownership interests of the owners of CAM.  Second Am. Compl. ¶ 16 [Doc. No. 60].  Julie Chrisley refers to her husband as Todd Chrisley throughout the rest of the second amended complaint.  Second Am. Compl. ¶¶ 6 and 25 [Doc. No. 60].  The court treats these identifications as referring to the same individual.

RICO") O.C.G.A. § 16-14-1 *et seq.*[11] and breach of fiduciary duty. In any

action over which the court has original jurisdiction, the court "shall have

supplemental jurisdiction over all other claims that are so related to claims in

the action within such original jurisdiction that they form part of the same

case or controversy under Article III of the United States Constitution." 28

U.S.C. § 1367(a). However, the court may decline to exercise supplemental

jurisdiction if "the district court has dismissed all claims over which it has

original jurisdiction." 28 U.S.C. § 1367(c)(3). The federal RICO claim is the

only claim over which the court has original jurisdiction. For the reasons

discussed above, the court dismisses the federal RICO claim for lack of

standing. As permitted under 28 U.S.C. § 1367(c)(3), the court declines to

exercise supplemental jurisdiction over the state law claims set forth in the

second amended complaint.

It is apparent from the second amended complaint that Julie Chrisley

relies on supplemental jurisdiction for the court to have jurisdiction over the

state law claims. The court does not have original jurisdiction over the state

law claims pursuant to 28 U.S.C. § 1331. And Julie Chrisley does not allege

sufficient facts to support diversity jurisdiction pursuant to 28 U.S.C. § 1332

---

[11] Julie Chrisley cites O.C.G.A. § 16-4-3 in the second amended complaint.
The code section cited is not part of the Georgia RICO act. The court
assumes that Julie Chrisley intended to cite O.C.G.A. § 16-14-1 *et seq.*

as an alternative basis for jurisdiction over the state law claims. Julie

Chrisley states that she "is a resident of the State of Florida and she also

maintains a home in Georgia." Second Am. Compl. ¶ 5 [Doc. No. 60]. She

also states, "From 2009 through 2012, Plaintiff and her family lived for

extended periods in California or Florida, although they have maintained a

home in Atlanta at all time relevant to this matter." Second Am. Compl. ¶ 15

[Doc. No. 60]. The law is clear that the burden is on the party invoking the

court's jurisdiction to show facts supporting the existence of federal

jurisdiction. *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002).

Diversity jurisdiction exists over citizens of different states. 28 U.S.C.

§ 1332(a)(1). A complaint must allege the party's citizenship, which is

equivalent to domicile. *McCormick*, 293 F.3d at 1257. "Citizenship, not

residence, is the key fact that must be alleged in the complaint to establish

diversity for a natural person." *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th

Cir. 1994). Julie Chrisley has not clearly identified her citizenship in the

second amended complaint. She merely identifies a few states in which she

and her family have resided. It is unclear whether she is a citizen of Florida,

Georgia, or California. Julie Chrisley has not satisfied her burden to show

facts supporting the existence of diversity jurisdiction. Therefore, the court

dismisses the state law claims because it declines to exercise supplemental

jurisdiction over the claims, and Julie Chrisley does not allege an alternative basis upon which to exercise jurisdiction.

## III.   Conclusion

The court GRANTS the motions to dismiss filed by Mark Braddock, KAS, Alina Clerie, and ARC [Doc. Nos. 64, 65, 66, 67].  The second amended complaint is hereby DISMISSED.

**SO ORDERED** this 28th day of January, 2014.

/s/ Charles A. Pannell, Jr.
CHARLES A. PANNELL, JR.
United States District Judge

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

JULIE CHRISLEY, individually and in her
capacity as the majority owner of
CHRISLEY ASSET MANAGEMENT, LLC,

             Plaintiff,

vs.

MARK BRADDOCK, KEY ASSET
SOLUTIONS, LLC, ALINA CLERIE, ARC
AUTO BROKERS, LLC,

             Defendants.

CIVIL ACTION FILE

NO. 1:12-cv-3524-CAP

## J U D G M E N T

This action having come before the court, Honorable Charles A. Pannell, Jr., United States District Judge, for consideration of Defendants' Motions to Dismiss, and the court having granted said motions, it is

**Ordered and Adjudged** that the plaintiff take nothing; that the defendants recover their costs of this action, and the action be, and the same hereby, is **dismissed**.

Dated at Atlanta, Georgia, this 28th day of January, 2014.

JAMES N. HATTEN
CLERK OF COURT

By:  s/Andrea Gee_____
       Deputy Clerk

Prepared, Filed, and Entered
in the Clerk's Office
  January 28, 2014
James N. Hatten
Clerk of Court

By:_ s/Andrea Gee_____
       Deputy Clerk

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

John Ley
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

March 21, 2014
CORRECTED COPY

Jackson Edward Oliver
Thompson Law Group, LLC
3390 PEACHTREE RD STE 1300
ATLANTA, GA 30326

Appeal Number:  14-10818-F
Case Style:  Robert Thompson, et al v. Mark Braddock, et al
District Court Docket No:  1:12-cv-03524-CAP

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.**

The referenced case has been docketed in this court. Please use the appellate docket number noted above when making inquiries.

Attorneys who wish to participate in this appeal must be properly admitted either to the bar of this court or for this particular proceeding pursuant to 11th Cir. R. 46-1. In addition, all attorneys (except court-appointed counsel) who wish to participate in this appeal must complete and return an appearance form within fourteen (14) days. Application for Admission to the Bar and Appearance of Counsel Form are available on the Internet at www.ca11.uscourts.gov. The clerk may not process filings from an attorney until that attorney files an appearance form. See 11th Cir. R. 46-6.

FRAP 26.1 and the accompanying circuit rules provide that the Certificate of Interested Persons and Corporate Disclosure Statement (CIP) must be filed by every appellant [and cross-appellant] with this court within 14 days after the date the appeal is docketed in this court, or along with the filing in this court by any party of any motion, petition, or pleading, whichever occurs first. The rules further provide that on the same day a certificate is electronically filed using the ECF system, the party filing it must also complete the court's web-based certificate at the Web-Based CIP link of the court's website. Pro se parties are **not required or authorized** to complete the web-based certificate.

Pursuant to Eleventh Circuit Rule 42-1(b) you are hereby notified that upon expiration of (14) days from this date, this appeal will be dismissed by the clerk without further notice unless the

default(s) noted below have been corrected:

**Pay to the DISTRICT COURT clerk the docketing and filing fees, with notice to this office, or request <u>leave to proceed in forma pauperis on appeal in the district court</u>. <u>See</u> Fed.R. App.P. 24(a). If the district court denies such leave, appellant may file in this court a <u>Motion to Proceed in forma pauperis in this court</u> with a financial affidavit.**

Sincerely,

JOHN LEY, Clerk of Court

Reply to: Gerald B. Frost, F
Phone #: (404) 335-6182

DKT-2 Appeal WITH Deficiency